**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| F21 OPCO, LLC, *et al.*,[1] | Case No. 25-10469 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF (I) INTERIM ORDER AUTHORIZING (A) THE
CONDUCT OF THE STORE CLOSING SALES, WITH SUCH SALES TO BE FREE
AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) GRANTING
RELATED RELIEF, AND (II) FINAL ORDER AUTHORIZING (A) THE DEBTORS TO
ASSUME THE AGENCY AGREEMENT, (B) THE CONDUCT OF THE STORE
CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS,
CLAIMS, AND ENCUMBRANCES, AND (C) GRANTING RELATED RELIEF**

F21 OpCo, LLC and its debtor affiliates, as debtors and debtors in possession (collectively,
the "**Debtors**") in the above-captioned chapter 11 cases (these "**Chapter 11 Cases**"), hereby
submit this motion (this "**Motion**") for entry of interim and final orders, substantially in the forms
attached hereto as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**" and,
together with the Interim Order, the "**Proposed Orders**"), (a) authorizing the Debtors, upon entry
of the Final Order, to assume the *Letter Agreement Governing Inventory Disposition* dated
November 5, 2024 (the "**Initial Agreement**") by and between F21 OpCo, LLC ("**F21**" or
"**Merchant**") and Hilco Merchant Resources, LLC ("**Hilco**"), the First Amendment to Letter
Agreement dated December 10, 2024 (the "**First Amendment**") by and between F21 and Hilco,
and the Second Amendment to Letter Agreement (the "**Second Amendment**" and, collectively

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
F21 OpCo, LLC (8773); F21 Puerto Rico, LLC (5906); and F21 GiftCo Management, LLC (6412). The Debtors'
address for purposes of service in these Chapter 11 Cases is 110 East 9th Street, Suite A500, Los Angeles, CA
90079.

with the Initial Agreement and the First Amendment, the "**Agency Agreement**"),[2] dated February 12, 2025, by and between F21 on the one hand, and a contractual joint venture composed of Hilco, Gordon Brothers Retail Partners, LLC, and SB360 Capital Partners, LLC (collectively, the "**Agent**"), on the other hand, a copy of which is attached as **Exhibit 1** to each of the Proposed Orders, (b) authorizing the Debtors to conduct store closing or similar themed sales in accordance with the terms of the Agency Agreement and the Store Closing Sales guidelines (the "**Sale Guidelines**"), a copy of which is attached as **Exhibit 2** to each of the Proposed Orders, with such sales to be free and clear of all liens, claims, and encumbrances, and (c) granting certain related relief.    In support of this Motion, the Debtors rely upon, and incorporate by reference, the *Declaration of Stephen Coulombe in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"),[3] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.        The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction to consider this Motion under 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).   Under Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties,

---

[2]    Pursuant to this Motion, the Debtors seek, in the Interim Order, confirmation that the Agency Agreement is operative and effective, and in the Final Order, authorization to assume the Agency Agreement.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration or the Agency Agreement, as applicable.

cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of these Chapter 11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105, 363, 365, 364 and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and Rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### I.      GENERAL BACKGROUND

4.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in the Court commencing these Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested and no committee has been appointed in these Chapter 11 Cases.

5.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.  Simultaneously herewith, the Debtors have filed a motion seeking to have these Chapter 11 Cases jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

### II.     THE DEBTORS' PREPETITION STORE CLOSING SALES EFFORTS

6.      As described in more detail in the First Day Declaration, the Debtors' business operations have been negatively impacted in recent years by challenges affecting many peer retailers including, among other things, inflationary pressures, decreased consumer discretionary

spending, contracting margins, and shifting customer preferences.  In this context, in late 2024, the Debtors and their advisors began exploring restructuring alternatives.

7.     In November 2024, to address immediate liquidity issues, F21 and Hilco entered into the Initial Agreement, which set forth the terms on which Hilco would oversee liquidation of inventory and merchandise at eleven of F21's most underperforming brick and mortar retail locations (the "**Initial Closing Stores**").  The sales at the Initial Closing Stores commenced on November 7, 2024, and concluded prior to the Petition Date.

8.     On December 10, 2024, F21 and Hilco entered into the First Amendment to add seven (7) stores to the list of Initial Closing Stores (the "**Additional Initial Closing Stores**").  The sales at the Additional Initial Closing Stores commenced on December 12, 2024, and concluded prior to the Petition Date.  In connection therewith, the Debtors surrendered the Initial Closing Stores and Additional Initial Closing Stores to applicable landlords prior to the Petition Date.

## III.   THE AGENCY AGREEMENT

9.     Once it was determined that the Debtors would likely seek the protection of the Court and wind down their operations in connection therewith, the Debtors began soliciting proposals from national liquidation firms interested in overseeing the contemplated store closing process (the "**Store Closing Sales**") for the Debtors' remaining stores prior to and during these Chapter 11 Cases (collectively, the "**Closing Stores**").  After evaluating all available options, the Debtors, in consultation with their advisors, selected the Agent, which is comprised of three leading and reputable firms that, collectively, have the expertise and capacity to conduct the Store Closing Sales, and entered into the Second Amendment memorializing the terms on which the Agent will serve as the exclusive liquidator for the Debtors.  Consistent with the final amendment to the Agency Agreement, the initial wave of the Store Closing Sales commenced at the Closing Stores on or about February 14, 2025 (the "**Sale Commencement Date**"), and the second wave of

32647456.12

Store Closing Sales commenced on or about February 27, 2025. For all Store Closing Sales, it is contemplated that they will conclude no later than April 30, 2025 (the "**Sale Termination Date**"), provided, however, that F21 and the Agent may mutually agree in writing to extend or terminate a Store Closing Sales at any Closing Store prior to the Sale Termination Date, and that different Closing Stores may have different Sale Commencement Dates or Sale Termination Dates, respectively. The Agency Agreement also provides that, during the Sale Term, the Agent may sell certain Store Closing Assets through wholesale channels.

10.     In selecting the Agent, the Debtors concluded, in their business judgment, that (a) the Agent's services are necessary (i) for a seamless and efficient large-scale store closing process, as is contemplated by this Motion, and (ii) to maximize the value of the saleable inventory located in the Closing Stores as of the Sale Commencement Date or shipped to the Closing Stores from the Debtors' distribution center (as defined in greater detail in the Agency Agreement, the "**Merchandise**", as further defined below) during the period between the Sale Commencement Date and the Sale Termination Date (the "**Sale Term**"), and the associated furniture, fixtures, and equipment (as defined in the Agency Agreement, the "**FF&E**" and, together with the Merchandise, the "**Store Closing Assets**"), and (b) the Agent is qualified and capable of performing the required tasks in a value-maximizing manner.

11.     The Debtors and their advisors have worked with the Agent to determine which, if any, programs and policies governing customer transactions (the "**Customer Programs**") should continue during the Sale Term. To that end, the Debtors have determined to continue certain customer programs as described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Maintenance, Administration, and Continuation of Debtors' Customer Programs and (II) Granting Related Relief* filed contemporaneously herewith (the "**Customer Programs**

**Motion**").  Given the current strategy, and as set forth in the Customer Programs Motion, the Debtors seek authority to honor their gift card obligations through and including April 15, 2025 (the "**Gift Card Termination Date**"), which is thirty days from the Petition Date.  No later than February 27, 2025, the Debtors stopped selling gift cards at their store point-of-sales and on their ecommerce website.  At that time or shortly thereafter, the Debtors posted conspicuous signage at their stores advising customers that gift cards would be honored through the Gift Card Termination Date, and a banner was placed on the Debtors' website advising online customers in the same manner.

12.     Additionally, as described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay and Honor Certain (A) Prepetition Wages, Benefits, and Other Compensation Obligations; (B) Prepetition Employee Business Expenses; (C) Bonus Program Obligations; and (D) Workers' Compensation Obligations; (II) Authorizing Banks to Honor and Process Checks and Transfers Related to Such Obligations; and (III) Granting Related Relief* (the "**Wages Motion**") filed contemporaneously herewith, the Debtors have worked with the Agent to implement a retention program designed to retain non-insider full-time store managers and supervisors during the Store Closing Sale.  The Debtors are seeking approval of such bonus program in connection with the Wages Motion.

13.     The material terms of the Agency Agreement are described in the summary chart below.[4]

| Provision | Description |
|---|---|
| **Merchandise** | "**Merchandise**" shall mean all goods, saleable in the ordinary course, located in the Closing Stores on the Sale Commencement Date or goods that, upon mutual agreement between the Parties, Merchant ships to the Closing Stores subsequent to the Sale |

---

[4]     To the extent that this summary differs in any way from the terms set forth in the Agency Agreement, the terms of the Agency Agreement shall control.

| Provision | Description |
|---|---|
| | Commencement Date for inclusion in the Store Closing Sales. |
| | "Merchandise" does not mean and shall not include: (a) goods that belong to sublessees, licensees or concessionaires of Merchant; (b) FF&E; or (c) damaged or defective merchandise that cannot be sold. |
| **Sale Term** | Agent shall complete the Store Closing Sales at each Closing Store no later than April 30, 2025, unless mutually extended by Debtors and Agent. |
| **Agent's Undertakings** | During the Sale Term, Agent shall, in collaboration with Merchant, (a) provide qualified Supervisors engaged by Agent to oversee the management of the Closing Stores; (b) determine appropriate point-of-sale and external advertising for the Closing Stores, approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels for the Closing Stores, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Closing Stores' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Closing Stores; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) determine the necessity for obtaining any applicable permits and governmental approvals to conduct the Store Closing Sales, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Store Closing Sales, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; (i) implement Agent's affiliate CareerFlex program for Merchant's Closing Store level and other employees; (j) include Additional Agent Goods (as defined in the Agency Agreement) in the Store Closing Sales in the Agent's discretion under the terms set forth in the Agency Agreement; and (k) provide such other related services deemed necessary or appropriate by Merchant and Agent. |
| | The Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant. |
| **Merchant's Undertakings** | During the Sale Term, Merchant shall (a) be the employer of the Closing Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Closing Stores, the Closing Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Closing Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements determined by the Merchant and Agent to be necessary or desirable for the operation of the Closing Stores during the Store Closing Sales; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Closing Stores; (h) apply |

| Provision | Description |
|---|---|
| | for and obtain, with Agent's assistance and support, all applicable permits and authorizations (including landlord approvals and consents) for the Store Closing Sales; (i) assist Agent with implementing the CareerFlex program for Merchant's Closing Store level and other employees; and (j) ensure that Agent has quiet use and enjoyment of the Closing Stores for the Sale Term in order to perform its obligations under the Agency Agreement.<br><br>Merchant shall provide throughout the Sale Term central administrative services necessary for the Store Closing Sales, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.<br><br>The Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent. |
| **Store Closing Sales** | All sales of Merchandise shall be made on behalf of Merchant. Agent does not have, nor shall it have, any right, title or interest in the Merchandise. All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant. |
| **Agent Fee and Expenses** | The Agent shall earn a base fee equal to two (2.0%) of the Gross Proceeds of Merchandise sold at the Closing Stores during the Sale Term. Agent shall earn a base wholesale fee of seven and one half percent (7.5%) of the Gross Proceeds of Merchandise sold through Agent's wholesale channels.<br><br>In addition to the Merchandise Fee, and not in lieu thereof, the Merchant shall pay to the Agent from Gross Proceeds of such Merchandise (but not Gross Proceeds of Merchandise sold through wholesale channels) an additional fee based upon the Gross Recovery Percentages achieved as set forth in the following table. The Additional Incentive Compensation shall be equal to the aggregate sum of the percentages set forth in the "Additional Incentive Compensation" column of the table (e.g., calculated back to first dollar) for the corresponding Gross Recovery Percentage achieved; provided, however, no Additional Incentive Compensation shall be earned or payable where the Gross Recovery Percentage is less than 138.9%:<br><br>{{TABLE}} |

| Gross Recovery Percentage | Additional Incentive Compensation |
|---|---|
| Between 138.9% and 140.9% | An additional 0.25% of Gross Proceeds (total fee equal to 2.25% of Gross Proceeds) |
| Above 140.9% | An additional 0.25% of Gross Proceeds (total fee equal to 2.5% of Gross Proceeds) |

| Provision | Description |
|---|---|
| **Additional Agent Goods** | Agent shall have the right, at Agent's sole cost and expense, to supplement the Merchandise in the Sale at the Stores with additional goods procured by Agent which are of like kind, and no lesser quality to the Merchandise in the Sale at the Stores ("**Additional Agent Goods**"); provided, further, that the cost of Additional Agent Goods shall not exceed 20% of the aggregate Cost Value of Merchandise in the Sale. The Additional Agent Goods shall be purchased by Agent as part of the Sale, and delivered to the Stores at Agent's sole expense (including as to labor, freight and insurance relative to shipping such Additional Agent Goods to the Stores). Sales of Additional Agent Goods shall be run through Merchant's cash register systems; provided however, that Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise. Agent and Merchant shall also cooperate so as to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods as non-Merchant goods. Additionally, Agent shall provide signage in the Stores notifying customers that the Additional Agent Goods have been included in the Sale.

Agent and Merchant intend that the transactions relating to the Additional Agent Goods are, and shall be construed as, a true consignment from Agent to Merchant in all respects and not a consignment for security purposes. Subject solely to Agent's obligations to pay to Merchant the Additional Agent Goods Fee, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds. The Additional Agent Goods shall at all times remain subject to the exclusive control of Agent.

Merchant shall, at Agent's sole cost and expense, insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Agent shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods. |
| **Merchant's Indemnification** | Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential coinvestors, principals, affiliates, and Supervisors harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties; (b) the material breach of any provision of the Agency Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Closing Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law. |

| Provision | Description |
|---|---|
| **Agent's Indemnification** | Agent shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential coinvestors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, the Agency Agreement by Agent; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Store Closing Sales, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement. |
| **Merchant's Insurance** | Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Closing Stores and shall cause Agent to be named an additional insured with respect to all such policies. At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements. |
| **Agent's Insurance** | As an expense of the Store Closing Sales, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least two million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Agent's provision of services at the Closing Stores. Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of the Agency Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder.  In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements.  Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to the Agency Agreement, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name

Merchant as an additional insured and loss payee under the policy for each such insurance. |

32647456.12

| Provision | Description |
|-----------|-------------|
| **FF&E** | Agent shall sell the FF&E in the Closing Stores from the Closing Stores themselves and shall sell FF&E from Merchant's distribution center(s) and corporate offices. Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with the sale of FF&E, which costs and expenses shall be incurred pursuant to the Budget, as may be modified from time to time by mutual agreement of the Parties. Agent shall have the right to abandon any unsold FF&E. For the avoidance of doubt, Agent shall be the exclusive agent for FF&E sales from any facilities designated for disposition by Merchant during the Store Closing Sales. <br><br> Agent shall be entitled to a commission from the sale of the FF&E equal to 17.5% of the Gross Proceeds of the sale of the FF&E. <br><br> Agent shall remit to Merchant all Gross Proceeds from the sale of FF&E. |

## RELIEF REQUESTED

14.    By this Motion, the Debtors seek entry of the Interim Order and the Final Order: (a) authorizing the Debtors, upon entry of the Final Order, to assume the Agency Agreement, (b) authorizing the Debtors to conduct the Store Closing Sales in accordance with the terms of the Agency Agreement and the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, and (c) granting certain related relief.

## BASIS FOR RELIEF

### I.    ASSUMPTION OF THE AGENCY AGREEMENT IS WARRANTED UNDER THE CIRCUMSTANCES

15.    The Debtors request authority to assume the Agency Agreement, upon entry of the Final Order, pursuant to section 365 of the Bankruptcy Code. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A debtor's determination to assume or reject an executory contract is governed by the "business judgment" standard. *See, e.g.*, *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. Oct. 27, 2009) (finding that a debtor's decision to assume or reject an executory contract will stand so

long as "a reasonable business person would make a similar decision under similar circumstances."); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice). "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

16.     The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See In re Integrated Res.*, 147 B.R. at 656; *see also Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor in possession's business judgment to assume or reject an executory contract or lease. *See, e.g., Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (stating that the business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate.").

17.     The Debtors, in consultation with their professional advisors, determined that the Closing Stores should be closed and the Store Closing Assets should be liquidated for the benefit of the Debtors' estates and creditors. Furthermore, as demonstrated by the First Day Declaration, after engaging in extensive, arm's-length negotiations with certain nationally-recognized

liquidators regarding the Store Closing Sales and conducting reasonable diligence, the Debtors determined that entering into the Agency Agreement would provide the greatest return to the Debtors' estates for the Store Closing Assets. Additionally, the Debtors believe that the terms set forth in the Agency Agreement are fair and equitable and present the best path forward with respect to winding down their operations.

18.     Further, for the Debtors to conclude the Store Closing Sales as quickly and efficiently as possible, and thereby minimize any unnecessary administrative expenses in connection with the prosecution of these Chapter 11 Cases, it is essential that the Debtors be permitted to continue performing pursuant to the Agency Agreement. The Agent has been conducting the Store Closing Sales since approximately February 14, 2025, and, consequently, has become familiar with the Debtors' operations in the Closing Stores and the Store Closing Sales conducted therein.

19.     As set forth in the First Day Declaration, were the Debtors unable to assume the Agency Agreement, the Debtors believe the estates would be prejudiced by unnecessary delay and expense, thereby prejudicing all stakeholders. Among other things, the Debtors and their advisors would need to devote valuable time and effort, at considerable expense to the Debtors and their estates, to retaining another firm to conduct the Store Closing Sales. Given the effectiveness of the Debtors' prepetition efforts to obtain the best possible terms for liquidation of the Store Closing Assets, the Debtors believe that they would be unable to locate alternate agents willing to conduct the Store Closing Sales with terms as favorable to the Debtors and their stakeholders as those set forth in the Agency Agreement. Moreover, the most valuable inventory has been sold, and the Debtors do not believe any reputable firm would be interested in continuing the Store Closing Sales at this juncture of the Debtors' wind down.

20.     In contrast to the harm that any failure to perform under the Agency Agreement would undoubtedly cause the Debtors and their estates, the Debtors believe that they will receive significant benefits from performing under the Agency Agreement and allowing the Store Closing Sales to proceed in an efficient and cost-effective manner during these Chapter 11 Cases under the guidance and expertise of the Agent.

21.     Accordingly, for the reasons set forth herein and in the First Day Declaration, the Debtors submit that there is sufficient business justification for assumption of the Agency Agreement upon entry of the Final Order.

## II.     SUFFICIENT BUSINESS JUSTIFICATION EXISTS FOR CONTINUATION OF THE STORE CLOSING SALES

22.     The Debtors request authority, pursuant to section 363(b) of the Bankruptcy Code, to sell the Store Closing Assets as part of the Store Closing Sales in accordance with the Agency Agreement and the Sale Guidelines.  Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have required that such use, sale, or lease be based upon the sound business judgment of the debtor.  *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of Lionel Corp.); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in *Abbotts Dairies*); *Dai-Icho Kangyo Bank v. Montgomery Ward*

*Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (same).

23.     As set forth above, the demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656.  Accordingly, similar store closing or liquidation sales are routinely approved by courts in this district in chapter 11 cases involving retail debtors.

24.     As described above and in the First Day Declaration, sound business reasons exist to justify the continuation of the Store Closing Sales.  Based upon the results of their exhaustive analysis of the Debtors' ongoing and future business prospects, the Debtors and their professional advisors have concluded that conducting the Store Closing Sales in accordance with the procedures set forth in the Agency Agreement and the Sale Guidelines is the best method to maximize recoveries to the estates.  The efficient and effective liquidation sales and procedures, as contemplated the Sale Guidelines and the services to be provided by Agent, will allow the Debtors to quickly vacate the Closing Stores and avoid the accrual of unnecessary administrative expenses, while maximizing the value of the Store Closing Assets.

25.     Accordingly, the Debtors submit that they have compelling business justifications for the continuation of the Store Closing in accordance with the terms of the Agency Agreement and Sale Guidelines.

**III.   THE SALE OF THE STORE CLOSING ASSETS FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, AND OTHER INTERESTS IS AUTHORIZED UNDER SECTION 363(F) OF THE BANKRUPTCY CODE**

26.     The Debtors request approval to sell the Store Closing Assets on a final "as is" basis, free and clear of liens, claims, interests and encumbrances, in accordance with section 363

of the Bankruptcy Code.  A debtor in possession may sell property under section 363(b) of the

Bankruptcy Code "free and clear of any interest in such property of an entity other than the estate"

if any one of the following conditions is satisfied:

> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interests;
>
> (2)     such entity consents;
>
> (3)      such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); s*ee Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345

(E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may

approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v.*

*Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991)

(same).

27.     Although the term "any interest" is not defined in the Bankruptcy Code, the trend

in modern cases is toward a "broader interpretation which includes other obligations that may flow

from ownership of the property."  *See Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*,

209 F.3d 252, 258–59 (3d Cir. 2000).  The scope of section 363(f) is not limited to *in rem* interests

in a debtor's assets.  *Id.* (citing *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir.

1996)).  A debtor can therefore sell its assets under section 363(f) free and clear of successor

liability that otherwise would have arisen under federal statute.  *Id.*

28.     The Debtors submit that it is appropriate to sell the Store Closing Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied.  In particular, the Debtors believe that at least section 363(f)(2) of the Bankruptcy Code will be met because the Debtors' prepetition secured lenders are secured by, among other things, the Store Closing Assets and have consented to the sale of the Store Closing Assets free and clear. Moreover, with respect to any other party asserting a lien, claim, or encumbrance against the Store Closing Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code.  Furthermore, the Debtors propose that any liens, claims, and encumbrances asserted against the Store Closing Assets be transferred to and attach to the amounts earned by the Debtors under the Store Closing Sales.

29.     Accordingly, the Debtors propose that section 363(f) of the Bankruptcy Code authorizes the transfer and conveyance of the Store Closing Assets free and clear of any liens, claims, and encumbrances.

## IV.     THE COURT SHOULD APPROVE THE PROPOSED SALE GUIDELINES

30.     As set forth in greater detail below, many Liquidation Laws (defined below) require special and cumbersome licenses, waiting periods, time limits, and other procedures in connection with store closing and liquidation sales.  Therefore, although the Debtors intend to comply fully with applicable state and local health and safety and consumer protection laws in connection with the Store Closing Sales, the Debtors seek a waiver of compliance with the Liquidation Laws and instead request the authority to conduct such sales in accordance with the Sale Guidelines.

31.     The Debtors developed the Sale Guidelines, which are market in this district and others, with the intent to provide a means of controlling the administrative burdens on their estates that are associated with complying with the Liquidation Laws, while at the same time protecting

32647456.12

the interests of their landlords and the applicable governmental agencies enforcing such laws. Accordingly, the Debtors submit that the Sale Guidelines adequately address any concerns that their landlords or the governmental agencies may raise with respect to the Store Closing Sales and, therefore, the requested relief below seeking the waiver of Liquidation Laws should be approved.

## V.    PAYMENT OF THE AGENT FEES AND EXPENSES IS AUTHORIZED UNDER SECTION 363 OF THE BANKRUPTCY CODE

32.    The Debtors request authorization, on an interim basis, to pay any amounts owed under the Agency Agreement to the Agent (the "**Agent Claims**").  Under section 363 of the Bankruptcy Code, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business.  *See* 11 U.S.C. § 363.  In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use.  *See In re Ionosphere Clubs,* 98 B.R. at 176.

33.    As discussed above, the Debtors have determined, in the sound exercise of their business judgment, that they will receive significant benefits from performing under the Agency Agreement and allowing the Store Closing Sales to proceed during the interim period under the guidance of the Agent.

34.    The Debtors' ability to successfully maximize the value of their assets depends in large part upon their ability to continue using the experience and knowledge of the Agent, including its experience with and knowledge of the Debtors' business, to continue the Store Closing Sales.  The Agent has already committed significant capital, energy and efforts to commence the Store Closing Sales.  Any disruption to the Store Closing Sales during the interim period would cause significant and unnecessary delays to the process of selling the Store Closing Assets and may impair the Debtors' ability to receive the necessary funds under the Agency

Agreement.  For the overall benefit to the Debtors' chapter 11 efforts, payment of the Agent Claims will ensure maximum value for all interested parties.  The Debtors believe that in order to avoid delays in their efforts to conduct the Store Closing Sales, it is critical that they be authorized to satisfy the Agent Claims.  Accordingly, the Debtors submit that the Court should grant the requested relief under section 363 of the Bankruptcy Code.

## VI.    PROTECTION OF THE AGENT PURSUANT TO SECTIONS 363(m) AND 364(e) OF THE BANKRUPTCY CODE IS WARRANTED

35.    As described above, entry into the Agency Agreement was the result of arm's-length negotiations between the Debtors and the Agent.  Indeed, the Debtors' prepetition solicitation of proposals from reputable firms was designed to, and did, ensure that all bidders had an equal and fair opportunity to bid on the opportunity to sell the Store Closing Assets during the Store Closing Sales.  Thus, the Debtors respectfully request that the Court find that the Agent acted in good faith within the meaning of section 363(m) of the Bankruptcy Code.

36.    Specifically, section 363(m) of the Bankruptcy Code provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

37.    While the Bankruptcy Code does not define "good faith," the Third Circuit has "turned to traditional equitable principles, holding that the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re Abbotts Diaries of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir. 1986).

38.     Because of the manner in which the prepetition bid solicitation process was conducted, the Agent was not able to exert any undue influence over the Debtors.  Furthermore, the assets that will be sold as part of the Store Closing Sales will not be sold to the Debtors' insiders.   Thus, the Store Closing Sales will not unfairly benefit insiders or any particular constituency in these Chapter 11 Cases.  There is no fraud or collusion or any attempt to take unfair advantage of another through the Agency Agreement or Store Closing Sales.

39.     The Debtors also submit that the Agency Agreement is the result of good-faith arm's-length negotiations and the good faith extension of credit by the Agent, as well as the other financial accommodations, as set forth in the Agency Agreement, constitute the extension of credit in good faith under section 364(e) of the Bankruptcy Code and, as such, the reversal or modification on appeal of the Court's authorization to consummate the transactions contemplated by the Agency Agreement, and the security granted thereunder, should not affect the validity of such transactions unless such authorization has been stayed pending appeal.  The Debtors further believe that the consideration provided in the Agency Agreement is fair and constitutes reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and other applicable Federal and State laws, if any.

40.     Based on the foregoing and under the circumstances, the Debtors believe that the Court should find that (a) entry into the Agency Agreement was the result of good faith arm's-length transactions and (a) the Agent is entitled to all of the protections of sections 363(m) and 364(e) of the Bankruptcy Code as requested herein.

## VII.    EXEMPTION FROM LIQUIDATION LAWS IS WARRANTED AND APPROPRIATE

41.     The states in which the Closing Stores are located have or may have licensing and other requirements governing the conduct of store closing, liquidation, or other inventory clearance

sales, including (but not limited to) state and local rules, laws, ordinances, and regulations related to store closing and liquidation sales, establishing licensing, permitting, or bonding requirements, waiting periods, time limits, bulk sale restrictions, augmentation limitations or fast pay laws that would otherwise apply to the Store Closing Sales, or consumer fraud laws, with the exception of deceptive advertising laws (collectively, the "**Liquidation Laws**").  Many such Liquidation Laws, however, provide that court-authorized liquidation sales are exempt from compliance therewith.

42.    The Debtors, therefore, request that the Court authorize the Debtors to conduct the Store Closing Sales without the necessity of, and the delay associated with, complying with the Liquidation Laws.  Because the Debtors and their assets are subject to the Court's jurisdiction, *see* 28 U.S.C. § 1334, the Court will be able to supervise the Store Closing Sales.  The Store Closing Sales are legitimate methods by which the Debtors can maximize the return from the sale of the Store Closing Assets for the benefit of their estates and creditors.  Moreover, creditors and the public interest are adequately protected by the jurisdiction and supervision of the Court.

43.    Even if a state or local law does not expressly except bankruptcy sales from its ambit, the Debtors submit that, to the extent that such state or local law conflicts with federal bankruptcy laws, it is preempted by the Supremacy Clause of the United States Constitution.  To hold otherwise would severely impair the relief otherwise available under section 363 of the Bankruptcy Code.  In concert with this premise, bankruptcy courts have consistently recognized that federal bankruptcy law preempts state and local laws that contravene the underlying policies of the Bankruptcy Code.  *See, e.g.*, *Aloe v. Shenango Inc. (In re Shenango Group, Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations pursuant to the bankruptcy code . . . . [A] state statute [ ]cannot place burdens on them where the result would contradict the priorities established by the federal bankruptcy code.").

44.     While preemption of state law is not always appropriate, as when the protection of public health and safety is involved, *see Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker &Drake, Inc.)*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (finding no preemption when state law prohibiting taxicab leasing was promulgated in part as a public safety measure), it is appropriate when, as here, the only state laws involved concern economic regulation.  *Id.* at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").  Moreover, pursuant to section 105 of the Bankruptcy Code, the Court has the authority to permit the Store Closing Sales to proceed notwithstanding contrary Liquidation Laws.  *See* 11 U.S.C. § 105(a).

45.     Here, section 363 of the Bankruptcy Code, which requires the Debtors to operate their businesses in a way that maximizes recoveries for creditors, will be undermined if the Court does not provide for the waiver of the Liquidation Laws because the Liquidation Laws constrain the Debtors' ability to marshal and maximize assets for the benefit of creditors.  Moreover, given the supervision of the Court, the requested waiver will not unduly undermine state and local requirements that would otherwise apply to the Store Closing Sales.  The Debtors only request that the Court authorize the Debtors to conduct the Store Closing Sales without the necessity of, and the delay associated with, obtaining various state licenses or permits, observing state and local waiting periods or time limits, and/or satisfying any additional requirements with respect to conducting the Store Closing Sales as store closings or similar type sales.  The Debtors fully intend to be bound by and comply with remaining statutes and regulations, such as health and safety laws.

46.     The Debtors also request that no other person or entity, including (but not limited to) any lessor or federal, state, or local agency, department, or governmental authority, be allowed to take any action to prevent, interfere with, or otherwise hinder consummation of the Store

Closing Sales, or the advertising and promotion (including through the posting of signs) of the Store Closing Sales, in the manner set forth in the proposed orders.

47.     Notwithstanding such requests, the Debtors propose to serve, within two (2) business days of the entry of the Proposed Orders, copies of such Orders and the Sale Guidelines attached thereto, by email, facsimile, or regular mail on the following parties: (a) the Attorney General's office for each state in which the Debtors operate a retail location, (b) the City Attorney of each city in which the Debtors operate a retail location, (c) the county consumer protection agency or similar agency for each county in which the Debtors operate a retail location, (d) the division of consumer protection for each state in which the Debtors operate a retail location, (e) the chief legal counsel for each local jurisdiction in which the Debtors operate a retail location (collectively, clauses (a) through (e), the "**Applicable Governmental Units**"), and (f) the applicable landlord for each Closing Store (collectively, the "**Landlords**").

48.     The Debtors further propose that, to the extent there is a dispute arising from or relating to the Store Closing Sales between any governmental unit (as defined in section 101(27) of the Bankruptcy Code) (each a "**Governmental Unit**") and the Debtors relating to the Liquidation Laws (such dispute, a "**Liquidation Dispute**"), the following procedures shall apply (the "**Resolution Procedures**"):

a. The Court shall retain exclusive jurisdiction to resolve the Liquidation Dispute which such Liquidation Dispute will be heard at the Final Hearing, absent a party obtaining expedited relief. Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised with respect to a Liquidation Dispute. Any Governmental Unit may assert a Liquidation Dispute and shall send a notice (the "**Dispute Notice**") explaining the nature of the dispute to: (i) the Debtors' proposed counsel, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and S. Alexander Faris, Esq. (afaris@ycst.com); (iii) counsel to Wells Fargo Bank, N.A. ("**Wells Fargo**") in its capacity as Prepetition ABL Administrative Agent, Otterbourg P.C., 230 Park Avenue,

New York, NY 10169, Attn: Chad Simon, Esq. (csimon@otterbourg.com) and Daniel Fiorillo, Esq. (dfiorillo@otterbourg.com); (iv) counsel to Pathlight Capital LP in its capacity as Prepetition Term Loan Agent, Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, NY 10036, Attn: Steven E. Fox, Esq. (sfox@riemerlaw.com) and Paul D. Bekker, Esq. (pbekker@riemerlaw.com); and (v) counsel to any statutory committee, no later than fourteen (14) days following the service of the Interim Order.

b.  If the Debtors, the Agent and the Governmental Unit are unable to resolve the Liquidation Dispute within fourteen (14) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Liquidation Dispute (a "**Dispute Resolution Motion**").

c.  In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Store Closing Sales pursuant to the Interim Order or the Final Order, as applicable, absent further order of the Court. Upon the entry of the Interim Order or the Final Order, the Court grants authority for the Debtors and the Agent to conduct the Store Closing Sales pursuant to the terms of the Interim Order or the Final Order, the Agency Agreement, and the Sale Guidelines (as may be modified by Side Letters, as defined in the Proposed Orders) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such Liquidation Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

## VIII.  THE COURT SHOULD WAIVE COMPLIANCE WITH ANY RESTRICTION IN THE LEASES

49.     Certain of the Debtors' leases governing the premises of the stores subject to the Store Closing Sales may contain provisions purporting to restrict or prohibit the Debtors from conducting store closing, liquidation, or similar sales.  Such provisions have been held to be

unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code. *See Ames Dep't Stores*, 136 B.R. at 359 (deciding that enforcement of such lease restrictions would "contravene overriding federal policy requiring debtor to maximize estate assets. . . ."); *In re R. H. Macy and Co., Inc.*, 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term, because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a Store Closing Sales and closing the store.); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in chapter 11 case where debtor sought to conduct a liquidation sale).

50.     Thus, as a result of the above and to the extent that such provisions or restrictions exist in any of the leases of the stores subject to the Store Closing Sales, the Debtors request that the Court authorize the Debtors and/or the Agent to conduct any liquidation sales without interference by any landlords or other persons affected, directly or indirectly, by the liquidation sales.

## IX.    APPOINTMENT OF A CONSUMER PRIVACY OMBUDSMAN IS UNNECESSARY

51.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor may not sell or release personally identifiable information about individuals unless such sale or lease is consistent with its policies or upon appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code. The Debtors will not be selling or releasing personally identifiable

information as part of the Store Closing Sales.  The Agent will be authorized, however, to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.  In light of the foregoing, the Debtors believe that appointment of a consumer privacy ombudsman is unnecessary under the circumstances of the Store Closing Sales.

**BANKRUPTCY RULE 6003 HAS BEEN SATISFIED
AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED**

52.    Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the commencement of a chapter 11 case to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Debtors believe an immediate and orderly transition into chapter 11 is critical to the success of these Chapter 11 Cases.  As discussed in detail above and demonstrated by the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

53.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief sought herein is necessary for the Debtors to operate their business without interruption, thereby preserving value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-

day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

54.     Notice of this Motion will be given to:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Wells Fargo; (c) counsel to Pathlight Capital LP as Prepetition Term Loan Agent; (d) counsel to Simon Blackjack Consolidated Holdings, LLC as Prepetition Subordinated Loan Agent; (e) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims against the Debtors; (f) the landlords for the Closing Stores; (g) the United States Attorney for the District of Delaware; (h) the Internal Revenue Service; (i) the state attorneys general for states in which the Debtors conduct business; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

[Remainder of page intentionally left blank.]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Orders

granting the relief requested in this Motion and such other and further relief as may be just and

proper.

Dated: March 17, 2025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ S. Alexander Faris*
Andrew L. Magaziner (No. 5426)
Robert F. Poppiti, Jr. (No. 5052)
Ashley E. Jacobs (No. 5635)
S. Alexander Faris (No. 6278)
Kristin L. McElroy (No. 6871)
Andrew M. Lee (No. 7078)
Sarah Gawrysiak (No. 7403)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Email:  amagaziner@ycst.com
          rpoppiti@ycst.com
          ajacobs@ycst.com
          afaris@ycst.com
          kmcelroy@ycst.com
          alee@ycst.com
          sgawrysiak@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*

32647456.12

28

## EXHIBIT A

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F21 OPCO, LLC, *et al.*,[1] | Case No. 25-10469 (___) |
| Debtors. | (Jointly Administered) |
| | Ref: Docket No. ___ |

## INTERIM ORDER AUTHORIZING (I) THE CONDUCT OF THE STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Interim Order**") (a) authorizing the Debtors, upon entry of the Final Order, to assume the Agency Agreement, (b) authorizing the Debtors to conduct store closing or similar themed sales in accordance with the terms of the Agency Agreement and the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, and (c) granting certain related relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion and the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: F21 OpCo, LLC (8773); F21 Puerto Rico, LLC (5906); and F21 GiftCo Management, LLC (6412). The Debtors' address for purposes of service in these Chapter 11 Cases is 110 East 9th Street, Suite A500, Los Angeles, CA 90079.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate

notice of the Motion has been given and that no other or further notice is necessary; and upon the

record herein; and after due deliberation thereon; and this Court having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and

other parties in interest, it is hereby

**FOUND, CONCLUDED AND DETERMINED THAT:**[3]

A.    The Debtors' decision to (i) enter into the Agency Agreement, a copy of which is

attached hereto as **<u>Exhibit 1</u>**, and (ii) perform under and make payments required by the Agency

Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their

fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other

parties in interest.

B.    The Agency Agreement was negotiated, proposed, and entered into by the Agent

and the Debtors without collusion, in good faith, and from arm's length bargaining positions.

C.    Time is of the essence in effectuating the Agency Agreement and continuing with

the Store Closing Sales contemplated therein without interruption.  The conduct of the Store

Closing Sales will provide an efficient means for the Debtors to dispose of the Store Closing

Assets.  The Store Closing Sales under the Agency Agreement must be permitted to continue to

maximize the value that the Agent may realize from the Store Closing Sales and the value that the

Debtors may realize from assuming the Agency Agreement.

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

32647456.12

D.      The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

E.      The Sale Guidelines, as described in the Motion and attached as **Exhibit 2** hereto, are reasonable and appropriate and will maximize the returns on the Store Closing Assets for the benefit of the Debtors' estates and creditors.

F.      The Store Closing Sales, in accordance with the Sale Guidelines and with the assistance of the Agent, will provide an efficient means for the Debtors to liquidate and dispose of the Store Closing Assets as quickly and effectively as possible, and are in the best interests of the Debtors' estates.

G.      The Resolution Procedures are fair and reasonable and comply with applicable law.

H.      The Debtors have represented that, pursuant to the Motion, they are not seeking to either sell or lease personally identifiable information during the course of the Store Closing Sales at the Closing Stores; *provided*, *however*, that the Agent will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

I.      No sale, transfer, or other disposition of the Store Closing Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Store Closing Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories.  The Agent is not a successor to the Debtors or their respective estates.

32647456.12

J.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

K.      The entry of this Interim Order is in the best interest of the Debtors, their estates and creditors, and all other parties in interest herein.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      All objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3.      The final hearing (the "**Final Hearing**") on the Motion shall be held on [_____, 2025, at__:__ .m] (prevailing Eastern Time).  On or before [__:__ _.m.] (prevailing Eastern Time) on [_____, 2025] (the "**Objection Deadline**"), any objections or responses to entry of a final order on the Motion shall be filed with this Court and served on:  (a) the Debtors, 110 East 9th Street, Suite A500, Los Angeles, CA 90079, Attn: Michael Brown (mbrown@thinkbrg.com); (b) the Debtors' proposed counsel, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and S. Alexander Faris, Esq. (afaris@ycst.com); (c) counsel to Wells Fargo Bank, N.A. in its capacity as Prepetition ABL Administrative Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad Simon, Esq. (csimon@otterbourg.com) and Daniel Fiorillo, Esq. (dfiorillo@otterbourg.com); (d) counsel to Pathlight Capital LP in its capacity as Prepetition Term Loan Agent, Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, NY 10036, Attn: Steven E. Fox, Esq. (sfox@riemerlaw.com) and Paul D. Bekker, Esq. (pbekker@riemerlaw.com); (e) counsel to Simon Blackjack Consolidated

Holdings, LLC in its capacity as Prepetition Subordinated Loan Agent, (i) Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: Mark D. Silva, Esq. (msilva@choate.com), Rick Thide, Esq. (rthide@choate.com), and Hampton Foushee, Esq. (hfoushee@choate.com); and (ii) Pashman Stein Walder Hayden, P.C., 824 North Market Street, Suite 800, Wilmington, DE 19801, Attn: Joseph C. Barsalona, Esq. (jbarsalona@pashmanstein.com); and (f) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Jane M. Leamy, Esq. (jane.m.leamy@usdoj.gov).  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

## I.    EFFECTIVENESS OF AGREEMENT

4.    The Agency Agreement is operative and effective on an interim basis.  The Debtors are authorized to act and perform in accordance with the terms of the Agency Agreement, including, but not limited to, making payments required by the Agency Agreement to the Agent without the need for any application of the Agent or a further order of this Court.  Notwithstanding this or any other provision of this Interim Order, nothing shall prevent or be construed to prevent any of the Agent (individually, as part of a joint venture, or otherwise) or any of their affiliates from bidding on the Debtors' other assets pursuant to an agency agreement or otherwise, and Agent is hereby authorized to bid on and guarantee or otherwise acquire such assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court.

5.    Subject to the restrictions set forth in this Interim Order and the Sale Guidelines, the Debtors and the Agent are authorized to take any and all actions as may be necessary or

32647456.12

desirable to implement the Agency Agreement and the Store Closing Sales, and each of the transactions contemplated by the Agency Agreement.

## II.    AUTHORITY TO ENGAGE IN THE STORE CLOSING SALES

6.      The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct the Store Closing Sales in accordance with this Interim Order, the Sale Guidelines, the Agency Agreement and any Side Letter (defined below).

7.      The Sale Guidelines are approved in their entirety on an interim basis.

8.      Subject to entry of the Final Order, all entities that are presently in possession of some or all of the Store Closing Assets in which the Debtors hold an interest that are or may be subject to the Agency Agreement or this Interim Order hereby are directed to surrender possession of such Store Closing Assets to the Debtors or the Agent.

9.      Except as provided herein, neither the Debtors nor the Agent nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit or any Landlord, to conduct the Store Closing Sales and any related activities in accordance with the Sale Guidelines.

## III.   ORDER BINDING

10.     This Interim Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract,

to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Store Closing Assets.

11.     This Interim Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Store Closing Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Interim Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Interim Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this case shall be and hereby is authorized to operate the Debtors' business to the fullest extent necessary to permit compliance with the terms of this Interim Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

32647456.12

## IV.    CONDUCTING THE STORE CLOSING SALES

12.    Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Agent is authorized to sell all the Store Closing Assets to be sold pursuant to the Agency Agreement free and clear of any and all liens, claims, encumbrances, and other interests ("**Encumbrances**"), including, without limitation, the liens and security interests, as the same may have been amended from time to time, of Wells Fargo and the Prepetition Term Loan Agent whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these Chapter 11 Cases were commenced; *provided, however*, that any such Encumbrances shall attach to the proceeds of the sale of the Store Closing Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closing Assets, subject to (i) the ABL-Term Loan Intercreditor Agreement and (ii) any claims and defenses that the Debtors may possess with respect thereto.

13.    Other than filings made by Wells Fargo and the Prepetition Term Loan Agent with respect to their liens and security interests in the Store Closing Assets, if any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Store Closing Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Store Closing Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of

this Interim Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Store Closing Sales and related transactions.

14.     All newspapers and other advertising media in which the Store Closing Sales may be advertised and all Landlords or licensors, as applicable, of the Closing Stores are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Agent to conduct the Store Closing Sales and the sale of Store Closing Assets pursuant to the Agency Agreement and the Sale Guidelines, including, without limitation, to conduct and advertise the sale of the Store Closing Assets and the Additional Agent Goods in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, and the Agency Agreement.

15.     Nothing nullifies or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order or in the Agency Agreement shall in any way (a) diminish the obligation of any entity to comply with environmental laws, or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the sale of the Store Closing Assets shall not be exempt from, and the Debtors and the Agent shall be required to comply with laws and regulations of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition,

traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**").  Nothing in this Interim Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise.  Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

16.     In accordance with and subject to the terms and conditions of the Agency Agreement, the Agent shall have the right to use the Closing Stores and all related store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closing Sales, free and clear of any interference from any entity or person, subject to compliance with the Sale Guidelines (as modified by the Side Letters) and this Interim Order.

17.     Subject to the Resolution Procedures provided herein, the Debtors and the Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Store Closing Sales without the need for a further order of this Court, including, but not limited to, advertising the sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," and "going out of business" or similar themed sale through the posting of signs (including the use of exterior banners at non-enclosed

mall Closing Stores, and at enclosed mall Closing Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of sign-walkers, A-frames and other street signage, in accordance with the Interim Order, Agency Agreement, and Sale Guidelines.

18.    Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Store Closing Assets, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Agent are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within five (5) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

19.    Except as expressly provided in the Agency Agreement and Sale Guidelines, the sale of the Store Closing Assets shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease, license, reciprocal easement agreement, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases or licenses, the necessity of obtaining any third party consents, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Store Closing Sales.  Breach of any such provisions in these Chapter 11 Cases in conjunction with the Store Closings shall not constitute a default under a lease or provide a basis to terminate the lease.  The Agent, along with landlords and licensors, as applicable, of the Closing Stores are authorized to enter into agreements ("**Side Letters**") between

32647456.12

themselves modifying the Sale Guidelines without further order of this Court, and such Side Letters shall be binding as among the Agent and any such landlords or licensors, as applicable, of the Closing Stores, provided that nothing in such Side Letters affects the provisions of paragraphs 15, 17, 18, and 30 of this Interim Order.  In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

20.    Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which paragraphs 15 and 30 of this Interim Order shall apply), no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder the continuation of the Store Closing Sales or the sale of Sale Closing Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords or licensors, as applicable, at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or sale of the Store Closing Assets or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

21.     The Agent shall honor gift cards and gift certificates, that were issued by or on behalf the Debtors prior to the Petition Date through and including April 15, 2025 (the "**Gift Card Termination Date**").  To the extent not already completed, as soon as reasonably practicable after entry of this Order, the Debtors shall post conspicuous signage at their stores and on their website advising customers that gift cards and gift certificates will not be honored after the Gift Card Termination Date.

22.     All sales of all Store Closing Assets and the Additional Agent Goods, if any, shall be "as is" and final.  Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Stores.  However, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

23.     Except as expressly provided for in the Agency Agreement, nothing in this Interim Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Store Closing Sales shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

24.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement, and the Debtors remain responsible for the payment of any and all sales taxes. The Debtors are directed to remit all taxes accruing from the Store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute, the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales

taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

25.     To the extent that the Debtors propose to sell Store Closing Assets that may contain any personal and/or confidential information about the Debtors' employees and/or customers (the "**Confidential Information**"), the Debtors shall remove all such the Confidential Information from such Store Closing Assets before they are sold.

26.     The Agent is authorized to sell, without incurring liability to any person or entity, the Store Closing Assets in accordance with the terms of this Interim Order, the Agency Agreement and the Sale Guidelines.

27.     Nothing in this Interim Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Store Closing Sales in accordance with the Sale Guidelines, as may have been modified by Side Letter, shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

28.     During the Store Closing Sales Term, the Agent shall be granted a limited license and right to use the trade names, logos, e-mail lists, mailing lists, customer lists, and e-commerce sites (including (without limitation) websites and social media sites), including a banner on such sites and a store locator to identify the Closing Stores, relating to and used in connection with the

operation of the stores as identified in the Agency Agreement, solely for the purpose of advertising the Store Closing Sales in accordance with the terms of the Agency Agreement, this Interim Order, and the Sale Guidelines; *provided, however,* that the Agent shall not receive personally identifiable information from the Debtors.

## V.    RESOLUTION PROCEDURES FOR DISPUTES REGARDING LIQUIDATION LAWS

29.    To the extent that the Store Closing Sales at the Closing Stores are conducted in accordance with this Interim Order and the Sale Guidelines, and are therefore conducted under the supervision of this Court, such Store Closing Sales are authorized notwithstanding any federal, state, or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, bulk sale laws, or fast pay laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions (collectively, the "**Liquidation Laws**").

30.    Provided that the Store Closing Sales are conducted in accordance with the terms of this Interim Order, the Agency Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Laws and, subject to paragraphs 15 and 18 herein, are authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Laws.  To the extent that between the Petition Date and the date of the Final Hearing there is a dispute arising from or relating to the Store Closing Sales, this

Interim Order, the Agency Agreement, or the Sale Guidelines, which dispute relates to any

Liquidation Sales Laws (a "**Liquidation Dispute**"), the following procedures shall apply:

a. The Court shall retain exclusive jurisdiction to resolve the Liquidation Dispute which such Liquidation Dispute will be heard at the Final Hearing, absent a party obtaining expedited relief.  Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised with respect to a Liquidation Dispute.  Any Governmental Unit may assert a Liquidation Dispute and shall send a notice (the "**Dispute Notice**") explaining the nature of the dispute to: (i) the Debtors' proposed counsel, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and S. Alexander Faris (afaris@ycst.com) (iii) counsel to Wells Fargo Bank, N.A. in its capacity as Prepetition ABL Administrative Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad Simon, Esq. (csimon@otterbourg.com) and Daniel Fiorillo, Esq. (dfiorillo@otterbourg.com); (iv) counsel to Pathlight Capital LP in its capacity as Prepetition Term Loan Agent, Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, NY 10036, Attn: Steven E. Fox, Esq. (sfox@riemerlaw.com) and Paul D. Bekker, Esq. (pbekker@riemerlaw.com); and (v) counsel to Hilco Merchant Resources, LLC, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn: Stephen Iacovo (stephen.iacovo@ropesgray.com); (vi) counsel to any statutory committee, no later than fourteen (14) days following the service of the Interim Order.

b. If the Debtors, the Agent and the Governmental Unit are unable to resolve the Liquidation Dispute within fourteen (14) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Liquidation Dispute (a "**Dispute Resolution Motion**").

c. In the event that a Dispute Resolution Motion is filed, nothing in this Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of this Interim Order or the Final Order nor the conduct of the Debtors pursuant to this Interim Order or the Final Order, violates such Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Interim Order or the Final Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order or the Final Order, as applicable, absent further order of the Court. Upon the entry of this Interim Order or the Final Order, the Court grants authority for the Debtors and the Agent to conduct the Store Closing Sales pursuant to the terms of this Interim Order or the Final Order, the Agency Agreement, and the Sale Guidelines (as may be modified by

Side Letters, as defined below) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such Liquidation Laws by the Bankruptcy Code. Nothing in this Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

31.      Within two (2) business days of the entry of this Interim Order, the Debtors shall serve copies of this Interim Order, which includes the Agency Agreement and the Sale Guidelines, by email, facsimile, or regular mail on the Applicable Governmental Units and the Landlords.

## VI.     SECTIONS 363(m) AND 364(e) OF THE BANKRUPTCY CODE

32.      Entry into the Agency Agreement is undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Interim Order is modified, amended or vacated by subsequent order of the Court or any other court.  The modification, amendment or vacatur of the authorization provided herein to enter into the Agency Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions (including the enforceability of the Store Closing Sales or the liens or priority authorized or created under the Agency Agreement or this Interim Order solely in respect of Additional Agent Goods and the proceeds therefrom), unless such authorization is duly stayed pending such appeal.  The Agent is entitled to all of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

## VII.    ADDITIONAL AGENT GOODS

33.      The Agent is authorized to supplement the Merchandise in the Store Closing Sales with Additional Agent Goods; *provided*, that the Debtors may reasonably object to the inclusion of Additional Agent Goods that are not of like kind and are of lesser quality to the Merchandise in

the Store Closing Sales at the Closing Stores, in which case the Debtors and the Agent shall work in good faith to resolve such objection, which resolution may require the exclusion of such Additional Agent Goods subject to the objection; *provided, further*, that the cost of Additional Agent Goods shall not exceed twenty percent (20%) of the aggregate Cost Value (as defined in the Agency Agreement) of the Merchandise in the Store Closing Sale. The Additional Agent Goods shall be purchased by the Agent as part of the Store Closing Sales and delivered to the Closing Stores at the Agent's sole expense (including as to labor, freight, and insurance relative to shipping such Additional Agent Goods to the Closing Stores).  Sales of Additional Agent Goods shall be run through the Debtors' cash register systems; provided, however, that the Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise. The Agent and Debtors shall cooperate to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods from the Merchandise. The Agent shall provide signage in the Closing Stores notifying customers that the Additional Agent Goods have been included in the Store Closing Sale.

34.     All transactions relating to the Additional Agent Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Agent to the Debtors under Article 9 of the Uniform Commercial Code (the "**UCC**") and not a consignment for security purposes.  Subject solely to Agent's obligations to pay to the Debtors the Additional Agent Goods Fee (as defined in the Agency Agreement), at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of the Agent, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim

against any of the Additional Agent Goods or the proceeds thereof. The Additional Agent Goods shall at all times remain subject to the exclusive control of the Agent. The Debtors shall, at Agent's sole cost and expense, insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard thereto. The Agent shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods.

35.     The Agent is hereby granted a first priority security interest in and lien upon (a) the Additional Agent Goods and (b) the Additional Agent Goods proceeds, less the Additional Agent Goods Fee, and which security interest shall be deemed perfected without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that the Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying the Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Debtors as the consignee therefor, and the Agent's security interest in and lien upon such Additional Agent Goods and the Additional Agent Goods proceeds).

## VIII.  MISCELLANEOUS

36.     Nothing in this Interim Order shall be deemed to constitute a postpetition assumption of any agreement under section 365 of the Bankruptcy Code.

37.     Subject to entry of the Final Order, any transfers by the Debtors to the Agent prior to the Petition Date (including, without limitation, any proceeds under the Agency Agreement and the valid, binding, and enforceable security interests granted to the Agent solely in respect of the Additional Agent Goods and the proceeds therefrom (subject to the Agent's payment of the Additional Agent Goods Fee)) are not subject to avoidance.

38.     No later than seven (7) days prior to the Objection Deadline, the Agent shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases, and the Debtors shall serve the same on the U.S. Trustee, any official committee of unsecured creditors appointed in these cases, and all parties who have filed requests for service under Bankruptcy Rule 2002.

39.     Non-material modifications, amendments, or supplementations to the Agency Agreement and related documents by the parties may be made in accordance with the terms thereof without further order of this Court; *provided that* any such modifications, amendment or supplements are not adverse to the Debtors or their estates, the interest of the landlords under the applicable Leases are not adversely affected, or as otherwise ordered by this Court; *provided further that* the Debtors shall provide counsel to Wells Fargo and counsel to the Prepetition Term Loan Agent copies of any such modifications, amendments, or supplements at least two (2) business days prior to the effectiveness thereof, which such modification(s), amendment(s), or supplement(s) shall be effective unless Wells Fargo or the Prepetition Term Loan Agent delivers a written objection to the Debtors' counsel, with a copy to any statutory committee (email being sufficient) prior to the expiration of such two (2) business day period.

40.     Neither the Agent nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing additional services to the Debtors or bidding on the Debtors' assets in connection with any other future process that may or may not be undertaken by the Debtors to close stores; *provided that* any such services and/or sales are approved by separate order of this Court.

41.     Nothing contained in any plan confirmed in these Chapter 11 Cases or any order of this Court confirming such plan or in any other order in these Chapter 11 Cases (including any

order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Interim Order.

42.     The Debtors are authorized and permitted to transfer to the Agent personal information in the Debtors' custody and control solely for the purposes of assisting with and conducting the Store Closing Sales and only to the extent necessary for such purposes, *provided* that Agent removes such personal information from the FF&E prior to the abandonment of the same.

43.     The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, the Agent shall not be, or to be deemed to be: (a) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories; or (b) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

32647456.12

21

44.     Notwithstanding the relief granted herein and any actions taken hereunder, except with respect to the Agent, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

45.     Nothing in this Interim Order is intended to affect any rights of any Applicable Governmental Unit to enforce any law affecting the Debtors' conduct of the Store Closing Sales prior to the Petition Date.

46.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

47.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

48.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Interim Order.  The failure to specifically include any particular provision of the Agency Agreement in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Agency Agreement and all of its provisions, payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Interim Order.

49.     To the extent that there is any conflict between this Interim Order, the Sale Guidelines, and the Agency Agreement, the terms of this Interim Order shall control over all other documents, and the Sale Guidelines shall control over the Agency Agreement.

50.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Interim Order.

32647456.12

## **EXHIBIT 1**

**Agency Agreement**



November 5, 2024

**_VIA EMAIL_**

Forever 21 OpCo, LLC
110 East 9th Street, Suite A500
Los Angeles, CA  90079
Attn:   Brad Sell
Email: brad.s@forever21.com

    Re:  **Letter Agreement Governing Inventory Disposition**

Dear Brad:

  By executing below, this letter shall serve as an agreement ("Agreement") between Hilco Merchant Resources, LLC, on the one hand ( "Agent" or a "Party"), and Forever 21 OpCo, LLC, on the other hand ("Merchant" or a "Party" and together with the Agent, the "Parties"), under which Agent shall act as the exclusive agent for the purpose of conducting a sale of certain Merchandise (as defined below) at (i) the Merchant's eleven (11) stores as set forth on Exhibit A hereto, and (ii) any other stores or facilities designated for disposition by Merchant from the date of this Agreement (each a "Store" and collectively, the "Stores") through a "Store Closing", "Everything Must Go", "Everything on Sale" or similar themed sale (the "Sale").

**A.**  **Merchandise**

  For purposes hereof, "Merchandise" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (defined below) or goods that, upon mutual agreement between the Parties, Merchant ships to the Stores subsequent to the Sale Commencement Date for inclusion in the Sale.  "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees or concessionaires of Merchant; (2) owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (collectively, "FF&E"); or (3) damaged or defective merchandise that cannot be sold.

**B.**  **Sale Term**

  For each Store, the Sale shall commence on November 7, 2024 or such later date as agreed by the Parties (the "Sale Commencement Date") and conclude no later than February 28, 2025 (the "Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Sale at any Store prior to the Sale Termination Date. The Parties also intend to conduct sales at additional stores to be identified, and may agree to extended or separate sale termination dates for such stores. The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term."  At the conclusion of the Sale, Agent shall surrender the premises for each Store to Merchant in broom clean condition and in accordance with the lease requirements for such premises; provided, however, Merchant shall bear all costs and expenses associated with surrendering the premises in accordance with the lease requirements for such

premises according to a budget mutually agreed to between the Agent and Merchant.  At the conclusion of the Sale at each Store, Agent shall photographically document the condition of each such Store.

**C.**    **Project Management**

(i)    Agent's Undertakings

During the Sale Term, Agent shall, in collaboration with Merchant, (a) provide qualified supervisors (the "Supervisors") engaged by Agent to oversee the management of the Stores; (b) determine appropriate point-of-sale and external advertising for the Stores, approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels for the Stores, approved in advance by Merchant, and appropriate bonus and incentive programs, if any, for the Stores' employees, approved in advance by Merchant; (d) oversee display of Merchandise for the Stores; (e) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) determine the necessity for obtaining any applicable permits and governmental approvals to conduct the Sale, including working with Merchant to obtain each in a timely and orderly fashion and preparing or causing to be prepared all forms necessary to assist in Merchant's securing any applicable permits and governmental approvals necessary to conduct the Sale, the costs and expenses of which shall be paid by Merchant and shall be in addition to the costs and expenses set forth on the Expense Budget; (i) implement Agent's affiliate CareerFlex program for Merchant's Store level and other employees; and (j) provide such other related services deemed necessary or appropriate by Merchant and Agent.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(ii)    Merchant's Undertakings

During the Sale Term, Merchant shall (a) be the employer of the Stores' employees, other than the Supervisors; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements determined by the Merchant and Agent to be necessary or desirable for the operation of the Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the Stores; (h) apply for and obtain, with Agent's assistance and support, all applicable permits and authorizations (including landlord approvals and consents) for the Sale; (i) assist Agent with implementing the CareerFlex program for Merchant's Store level and other employees; and (j) ensure that Agent has quiet use and enjoyment of the Stores for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.

The Parties expressly acknowledge and agree that Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent.

**D.    The Sale**

All sales of Merchandise shall be made on behalf of Merchant.  Agent does not have, nor shall it have, any right, title or interest in the Merchandise.  All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed, unless otherwise directed by Merchant.

**E.    Agent Fee and Expenses in Connection with the Sale**

In consideration of its services hereunder, Agent shall earn a fee equal to 2% of the Gross Proceeds of Merchandise sold at the Stores.  For purposes of this Agreement, "Gross Proceeds" means gross receipts calculated using the "gross rings" method, net of applicable sales taxes.

Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store level operating expenses, all costs and expenses related to Merchant's other retail store operations, and Agent's other reasonable, documented out of pocket expenses.  To control expenses of the Sale, Merchant and Agent have established an initial budget (the "Expense Budget") of certain delineated expenses, including (without limitation) payment of the costs of supervision (including (without limitation) Supervisors' wages, fees, travel, and deferred compensation) and advertising costs (including signage and the shipping, freight, and sales tax related thereto where applicable). The Expense Budget for the Sale is attached hereto as Exhibit B.  The Expense Budget may only be modified by mutual agreement of Agent and Merchant.  The costs of supervision set forth on Exhibits B include, among other things, industry standard deferred compensation.  Should Merchant decide to add additional stores to the scope of this Agreement, the Parties shall agree on an incremental expense budget and sale term for such additional stores through an amendment to this Agreement.

All accounting matters (including, without limitation, all fees, expenses, or other amounts reimbursable or payable to Agent) shall be reconciled on every Wednesday for the prior week and shall be paid within seven (7) days after each such weekly reconciliation.  The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) no later than forty five (45) days following the Sale Termination Date for the last Store.

Upon execution of this Agreement, the Merchant shall pay by wire transfer to the Agent an advance payment of costs and expenses delineated in the Expense Budget of $85,000.00 (the "Expense Advance").  The Expense Advance shall be held by Agent and applied towards Expense Budget items as incurred.  Any portion of the Expense Advance not so used shall be returned to Merchant within three days following the final reconciliation.

3

**F.**  **Indemnification**

    (i)  <u>Merchant's Indemnification</u>

Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors,  principals, affiliates, and Supervisors (collectively, "<u>Agent Indemnified Parties</u>") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Agent Indemnified Parties) against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Agent's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

    (ii)  <u>Agent's Indemnification</u>

Agent shall indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors,   principals,  and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "<u>Merchant Indemnified Parties</u>") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Agent; (c) any liability or other claims made by Agent's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortuous or otherwise actionable treatment of Merchant Indemnified Parties, or Merchant's customers by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement.

**G.**  **Insurance**

    (i)  <u>Merchant's Insurance Obligations</u>

Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection

with the Stores, and shall cause Agent to be named an additional insured with respect to all such policies.  At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder.  In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

(ii)    Agent's Insurance Obligations

As an expense of the Sale, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Agent's provision of services at the Stores.  Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a certificate or certificates evidencing the insurance coverage required hereunder.  In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements.  Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to this Agreement, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

## H.    Representations, Warranties, Covenants and Agreements

(i)    Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; (d) all normal course hard markdowns on the Merchandise have been, and will be, taken consistent with customary Merchant's practices, and (e) the Stores will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Agent.

(ii)    Agent warrants, represents, covenants and agrees that (a) Agent is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform the Agent's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Agent and this Agreement constitutes a valid and binding obligation of Agent enforceable against Agent in accordance with its terms and conditions, and the consent of no other entity or person is required for Agent to fully perform all of its obligations herein, (c) Agent shall comply with and act in accordance with any and all applicable state and local laws, rules, and regulations, and other

legal obligations of all governmental authorities, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, and (e) Agent will not take any disciplinary action against any employee of Merchant.

**I.**    **Furniture, Fixtures and Equipment**

Agent shall sell the FF&E in the Stores from the Stores themselves.  Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with the sale of FF&E, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties.  Agent shall have the right to abandon at the Stores any unsold FF&E.

In consideration for providing the services set forth in this section I, Agent shall be entitled to a commission from the sale of the FF&E equal to 17.5% of the Gross Proceeds of the sale of the FF&E.

Agent shall remit to Merchant all Gross Proceeds from the sale of FF&E.  During each weekly reconciliation described in section E above, Agent's FF&E fee shall be calculated, and Agent's calculated FF&E fee and all FF&E costs and expenses then incurred shall paid within seven (7) days after each such weekly reconciliation.

**J.**    **Termination**

The following shall constitute "Termination Events" hereunder:

(a)    Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting Party;

(b)    Any representation or warranty made by Merchant or Agent is untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)    the Sale is terminated or materially interrupted or impaired for any reason other than an event of default by Agent or Merchant.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) business days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default.  If this Agreement is terminated, Merchant shall be obligated to pay Agent all amounts due under this Agreement through and including the termination date.

**K.**    **Notices**

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows:  (a) To Merchant: at the address listed above with a copy to scott.hampton@forever21.com; (b) To Agent: c/o Hilco Merchant Resources, LLC,

One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax: 847-313-4799, Attn: T. Kellan Grant; or (c) such other address as may be designated in writing by Merchant or Agent.

**L.    Independent Consultant**

Agent's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect. No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Agent or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Agent is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**M.    Non-Assignment**

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party. Notwithstanding the foregoing, Agent shall have the right to syndicate the transaction contemplated by this Agreement by providing Merchant with written notice of such syndication. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

**N.    Severability**

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**O.    Governing Law, Venue, Jurisdiction and Jury Waiver**

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of Delaware (without reference to the conflicts of laws provisions therein). Merchant and Agent waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Agent against Merchant or Merchant against Agent on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Agent, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.

**P.    Entire Agreement**

7

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.   No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Q.**     **Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

*            *            *

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.  Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

_____

By:   T. Kellan Grant
Its:   EVP Commercial Counsel


**AGREED AND ACCEPTED as of the 5th day of November, 2024:**

F21 OPCO, LLC

*Brad Sell*
_____
By:      Brad Sell
Its:      Chief Financial Officer

Docusign Envelope ID: 5258A48D-8E85-4AC9-BC18-63BBD08FBE5

# **EXHIBIT A**

## **Store List**

## **Exhibit B**

## **Expense Budget**



December 10, 2024

*<u>VIA EMAIL</u>*

Forever 21 OpCo, LLC
110 East 9th Street, Suite A500
Los Angeles, CA  90079
Attn:   Brad Sell
Email: brad.s@forever21.com

Re:      <u>**First Amendment to Letter Agreement**</u>

Dear Brad:

Reference is made to that certain Letter Agreement Governing Inventory Disposition (the "<u>Agreement</u>") by and between Hilco Merchant Resources, LLC ("<u>Agent</u>") and Forever 21 OpCo, LLC ("<u>Merchant</u>" and together with Agent, the "<u>Parties</u>")), dated as of November 5, 2024. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

The Parties hereby amend the Agreement as follows (the "<u>Amendment</u>"):

As set forth in the Agreement, Agent was engaged to act as the exclusive agent for the purpose of providing certain services in connection with the disposition of the Merchandise and FF&E located at certain of Merchant's retail locations.  Agent and Merchant have agreed to amend the Agreement to add the seven (7) additional stores reflected on <u>Exhibit A</u> to this Amendment (the "<u>Additional Stores</u>").

Merchant and Agent hereby further agree that, with respect to the Additional Stores, Agent will assist Merchant in disposing of the Merchandise and FF&E at the Additional Store through the conduct of "Store Closing", "Everything Must Go," "Everything on Sale" or similar themed sales (such sale, the "<u>Supplemental Sale</u>").  The Supplemental Sale will commence on December 12, 2024 (the "<u>Supplemental Sale Commencement Date</u>") and will terminate no later than February 23, 2025 (the "<u>Supplemental Sale Termination Date</u>"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Supplemental Sale at any Additional Store prior to the Supplemental Sale Termination Date.  The period from the Supplemental Sale Commencement Date to the Supplemental Sale Termination Date shall be referred to as the "<u>Supplemental Sale Term</u>."

To control expenses of the Supplemental Sale, Merchant and Agent have established an appropriate budget (the "<u>Supplemental Budget</u>," a copy of which is attached hereto as Exhibit B, of certain delineated expenses, including costs of supervision, deferred compensation, advertising (including signage and the shipping, freight, and sales tax related thereto where applicable)).

Both the Agreement and this Amendment shall govern the Supplemental Sale at the Additional Stores.  For purposes of interpreting the Agreement and the Amendment with respect to the Supplement Sale, the following defined terms and exhibits shall be replaced in the Agreement with the corresponding defined terms and exhibits in or attached to this Amendment:

| Agreement | Amendment |
|-----------|-----------|
| Budget | Supplemental Budget |
| Sale | Supplemental Sale |
| Store or Stores | Additional Store or Additional Stores |
| Sale Commencement Date | Supplemental Sale Commencement Date |
| Sale Termination Date | Supplemental Sale Termination Date |
| Sale Term | Supplemental Sale Term |

With respect to this Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in section H of the Agreement, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in section H of the Agreement.

This Amendment, together the Agreement, all prior amendments or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreement.

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

_____

By:  T. Kellan Grant
Its:  EVP Commercial Counsel

**AGREED AND ACCEPTED as of the 12th day
of December, 2024:**

FOREVER 21OpCo, LLC

*Brad Sell*
D9DA973AC102408...

By:    Brad Sell
Its:    Chief Financial Officer

**Forever 21**

**Exhibit A**

**Forever 21.2024.4**

**Store List**

| F21 Loc Number | Name | Address | City | State | Zip | Landlord | Start Date | Closure Date | Gross Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|
| 20 | Brea Mall | 1025 Brea Mall | Brea | CA | 92821 | Simon Property Group, Inc. | 12/18/24 | 2/16/2025 | 17,384 |
| 387 | Houston Premium Outlets | 29300 Hempstead Road, Suite 882 | Cypress | TX | 77433 | SIMON | 12/18/24 | 2/16/2025 | 6,494 |
| 414 | Opry Mills Mall | 504 Opry Mills Dr. #352 | Nashville | TN | 37214 | SIMON | 12/18/24 | 2/23/2025 | 53,430 |
| 628 | Palms at Town & Country | 8268 Mills Dr. #114 | Kendall | FL | 33183 | Kimco Realty | 12/12/24 | 1/25/2025 | 20,268 |
| 638 | Tampa Premium Outlets | 2224 Grand Cypress Dr. Suite 730 | Lutz | FL | 33559 | SIMON | 12/18/24 | 2/16/2025 | 7,500 |
| 715 | Kenwood Towne Center | 7875 Montgomery Rd. #1150 | Cincinnati | OH | 45236 | Brookfield | 12/18/24 | 2/23/2025 | 16,638 |
| 3532 | The Avenues | 10306 Southside Blvd. | Jacksonville | FL | 32256 | SIMON | 12/18/24 | 2/16/2025 | 116,298 |
| **7** | | | | | | | | | **34,002** |

Docusign Envelope ID: E421AA1A-1466-407C-9A82-1BC0591E71F

Hilco Merchant Resources, LLC

12/10/2024

# Forever 21
## Exhibit B

| Expense Budget (1) | | |
|---|---|---|
| | **1st Week** | **Subsequent Weeks** |
| **Advertising** | | |
| Digital & Media | 2,422 | 2,422 |
| Signs (2) | 33,404 | - |
| Sign Walkers | - | - |
| Subtotal Advertising | 35,825 | 2,422 |
| | | |
| **Supervision** | | |
| Fees / Wages / Expenses (3) | 19,407 | 15,807 |
| Subtotal Supervision | 19,407 | 15,807 |
| | | |
| **Miscellaneous** | | |
| Miscellaneous /Legal (4) | - | - |
| Subtotal Miscellaneous | - | - |
| | | |
| Total Expenses | 55,232 | 18,229 |

Notes:

1. This Expense Budget contemplates a sale term of December, 12, 2024 through February 23, 2025. The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.

3. Includes Deferred Compensation and Insurance.

4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.



February 12, 2025

*__VIA EMAIL__*

F21 OpCo, LLC
110 East 9th Street, Suite A500
Los Angeles, CA  90079
Attn:   Brad Sell
Email: brad.s@forever21.com

Re:        **Second Amendment to Letter Agreement**

Dear Brad:

Reference is made to that certain Letter Agreement Governing Inventory Disposition by and between Hilco Merchant Resources, LLC ("Hilco") and F21 OpCo, LLC ("Merchant" and together with Agent (as defined below), the "Parties"), dated as of November 5, 2024 (as amended and revised, the "Agreement").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

The Parties hereby further amend the Agreement as follows (this "Amendment"):

As set forth in the Agreement, Hilco was engaged to act as the exclusive agent for the purpose of providing certain services in connection with the disposition of the Merchandise and FF&E located at certain of the Merchant's retail locations.  Hilco and Merchant have agreed to amend the Agreement to add (i) the 355 additional stores reflected on Exhibit A to this Amendment (in waves as may be reflected on Exhibit A), (ii) any other stores or facilities designated for disposition by Merchant subsequent to execution of this Amendment (collectively, the "Additional Stores"), and (iii) Gordon Brothers Retail Partners, LLC ("Gordon Brothers") and SB360 Capital Partners, LLC ("SB360" and, together with Gordon Brothers and Hilco, "Agent"), to which Hilco has syndicated certain responsibilities, as Parties to the Agreement. For the avoidance of doubt, following the effective date of this Amendment, Gordon Brothers and SB360 shall be bound by the terms of the Agreement (including this Amendment) and Merchant shall have the right to enforce the Agreement against them in the event of any breach.

Merchant and Agent hereby further agree that, with respect to the Additional Stores, Agent will assist Merchant in disposing of the Merchandise and FF&E at the Additional Stores through the conduct of "Store Closing", "Everything Must Go," "Everything on Sale" or similar themed sales (such sale, the "Supplemental Sale").  The Supplemental Sale will commence on February 12, 2025 (the "Supplemental Sale Commencement Date") and will terminate no later than April 30, 2025 (the "Supplemental Sale Termination Date"); provided, however, that the Parties may mutually agree in writing to extend or terminate the Supplemental Sale at any Additional Store prior to the Supplemental Sale Termination Date, and that different Additional Stores may have different Supplemental Sale Commencement Dates or Supplemental Sale Termination Dates as set forth in Exhibit A. The period from the Supplemental Sale Commencement Date to the Supplemental Sale Termination Date shall be referred to as the "Supplemental Sale Term."

To control expenses of the Supplemental Sale, Merchant and Agent have established an appropriate budget (the "Supplemental Budget," a copy of which is attached hereto as Exhibit B, of certain delineated expenses, including costs of supervision, deferred compensation, advertising (including signage and the shipping, freight, and sales tax related thereto where applicable)).

Both the Agreement and this Amendment shall govern the Supplemental Sale at the Additional Stores. For purposes of interpreting the Agreement and this Amendment with respect to the Supplement Sale, the following defined terms and exhibits shall be replaced in the Agreement with the corresponding defined terms and exhibits in or attached to this Amendment:

| Agreement | Amendment |
|-----------|-----------|
| Budget | Supplemental Budget |
| Sale | Supplemental Sale |
| Store or Stores | Additional Store or Additional Stores |
| Sale Commencement Date | Supplemental Sale Commencement Date |
| Sale Termination Date | Supplemental Sale Termination Date |
| Sale Term | Supplemental Sale Term |

Moreover, the first paragraph of section E of the Agreement is hereby replaced and reinstated as follows:

In consideration of its services hereunder, the Agent shall earn a base fee equal to two (2.0%) of the Gross Proceeds (as defined below) of Merchandise sold at the Stores during the Sale Term (the "Merchandise Fee"). Agent shall earn a base wholesale fee of seven and one half percent (7.5%) of the Gross Proceeds of Merchandise sold through Agent's wholesale channels (the "Wholesale Fee"). For purposes of this Agreement, "Gross Proceeds" means gross receipts (including, without limitation, as a result of the redemption of any gift card, or gift certificates issued by the Merchant), calculated using the "gross rings", from sales of Merchandise during the Sale Term, net of applicable sales taxes. For the purposes of calculating Gross Proceeds, the Merchant and the Agent shall keep (a) a strict count of gross register receipts less applicable sales taxes; and (b) cash reports of sales within each Store.

In addition to the Merchandise Fee, and not in lieu thereof, the Merchant shall pay to the Agent from Gross Proceeds of such Merchandise (but not Gross Proceeds of Merchandise sold through wholesale channels) an additional fee based upon the Gross Recovery Percentages achieved as set forth in the following table (the "Additional Incentive Compensation"). The Additional Incentive Compensation shall be equal to the aggregate sum of the percentages set forth in the "Additional Incentive Compensation" column of the table (e.g., calculated back to first dollar) for the corresponding Gross Recovery Percentage achieved; provided, however, no Additional Incentive Compensation shall be earned or payable where the Gross Recovery Percentage is less than 138.9%:

| Gross Recovery Percentage | Additional Incentive Compensation |
|---|---|
| Between 138.9% and 140.9% | An additional 0.25% of Gross Proceeds (total fee equal to 2.25% of Gross Proceeds) |
| Above 140.9% | An additional 0.25% of Gross Proceeds (total fee equal to 2.5% of Gross Proceeds) |

For purposes of the Additional Incentive Compensation:

"**Cost Value**" with respect to each item of Merchandise sold shall mean the lower of (i) the lowest per unit vendor cost in the File or in the Merchant's books and records, maintained in the ordinary course consistent with historic practices; or (ii) the Retail Price.

"**File**" shall mean shall mean Merchant's "01.Inventory listing as of Week 49 by Store (Category Level)" files and all subsequent files received by Agent.

"**Gross Recovery Percentage**" shall mean the Gross Proceeds divided by the sum of the aggregate Cost Value of all of the Merchandise sold during the Sale Term at the Stores.

"**Retail Price**" shall mean with respect to each item of Merchandise sold, the retail price reflected at the register for such item, excluding the discount granted in connection with such sale.

In addition to the foregoing, Merchant shall (a) pay $242,545 on account of accrued and unpaid invoice amounts owing to Agent by Merchant and (b) provide an additional Expense Advance (as defined in the Agreement) of $1,477,093 promptly upon execution of this Amendment. The Expense Advance shall be adjusted to ensure that Agent's outstanding fees and expenses owed under the Agreement shall be paid current prior to Merchant commencing a proceeding under the Bankruptcy Code. The Expense Advance shall be held by Agent and applied towards Expense Budget items as incurred. Any portion of the Expense Advance not so used shall be returned to Merchant within three days following the final reconciliation. [In addition, Merchant shall fund to Agent $75,000 as a legal deposit to be held by Agent and applied to Agent's legal fees as they are incurred. All amounts due to the Agent under the Agreement shall be payable upon receipt of invoice by Merchant. The remainder of section E shall continue in full force and effect. Notwithstanding anything to the contrary in the Agreement or this Amendment, Merchant's obligations to pay any fees, expenses, or other amounts due to Agent shall only be owed to Hilco.

Moreover, section I of the Agreement is hereby replaced and reinstated as follows:

"Agent shall sell the FF&E in the Stores from the Stores themselves, and shall sell FF&E from Merchant's corporate offices and, as applicable and only upon express direction from Merchant, its distribution center(s). Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with the sale of

FF&E, which costs and expenses shall be incurred pursuant to the Budget, as may be modified from time to time by mutual agreement of the Parties. Agent shall have the right to abandon any unsold FF&E. For the avoidance of doubt, Agent shall be the exclusive agent for FF&E sales from any facilities designated for disposition by Merchant during the term of this Agreement.

In consideration for providing the services set forth in this section I, Agent shall be entitled to a commission from the sale of the FF&E equal to 17.5% of the Gross Proceeds of the sale of the FF&E.

Agent shall remit to Merchant all Gross Proceeds from the sale of FF&E. During each weekly reconciliation described in section E above, Agent's FF&E fee shall be calculated, and Agent's calculated FF&E fee and all FF&E costs and expenses then incurred shall paid within seven (7) days after each such weekly reconciliation."

Moreover, section N of the Agreement is hereby replaced and reinstated as follows:

"Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective legal representatives, successors and permitted assigns. Notwithstanding the foregoing, Agent shall have the right to syndicate the transaction contemplated by this Agreement with additional entities so long as such relationships do not impose any additional cost or liability to Merchant, Agent provides Merchant with written notice of such syndication, and such partner(s) are reputable firms with experience and resources similar to those of Agent. Merchant acknowledges that as of February 12, 2025, Hilco has syndicated certain responsibilities under this Agreement to Gordon Brothers and SB360, who collectively serve as "Agent" hereunder. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns."

Additionally, new paragraph R is added to the Agreement as follows:

R.     **Bankruptcy**

"If the Merchant commences a case under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"), the Merchant shall promptly file a motion to assume sections of this Agreement under section 365 and/or 363 of the Bankruptcy Code, and utilize its reasonable best efforts to ensure that such motion is approved by an order that approves, among other things, as follows (the "Approval Order"): (i) the payment of all fees and reimbursement of expenses under this Agreement is approved without further order of the court; (ii) all such payments of fees and reimbursement of expenses related to such Approval Order

4

shall be made on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (iii) the payment of all fees and reimbursement of expenses to Agent related to such Approval Orders shall be included in any approved debtor-in-possession, cash collateral, or other post-petition financing budget as a condition to the assumption of this Agreement; (iv) the conduct of the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale; (v) the conduct of the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; (vi) the Sale through the conduct of "Going out of Business" or similar themed sales, in addition to the Sale themes set forth in the Agreement; (vii) the sale of Additional Agent Goods in accordance with the terms and conditions hereof; and (viii) Merchant in taking all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement. The Bankruptcy Court shall have exclusive jurisdiction to resolve any issues arising under this Agreement.  In such event, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over the Merchant, and each Party waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. From and after entry of the Approval Order, Agent shall conduct the Sale in accordance with the terms of the Approval Order in all material respects.  If any objections are received prior to entry of the Approval Order, Agent will use commercially reasonable efforts to assist Merchant in negotiating a consensual resolution of such objection with the objecting party."

Additionally, new paragraph S is added to the Agreement as follows:

**T.    Additional Agent Goods**

"Agent shall have the right, at Agent's sole cost and expense, to supplement the Merchandise in the Sale at the Stores with additional goods procured by Agent which are of like kind, and no lesser quality to the Merchandise in the Sale at the Stores ("Additional Agent Goods"); provided, further, that the cost of Additional Agent Goods shall not exceed 20% of the aggregate Cost Value of Merchandise in the Sale. The Additional Agent Goods shall be purchased by Agent as part of the Sale, and delivered to the Stores at Agent's sole expense (including as to labor, freight and insurance relative to shipping such Additional Agent Goods to the Stores).  Sales of Additional Agent Goods shall be run through Merchant's cash register systems; provided however, that Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise.  Agent and Merchant shall also cooperate so as to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods as non-Merchant goods.  Additionally, Agent shall provide signage in the Stores notifying customers that the Additional Agent Goods have been included in the Sale.

Agent shall pay to Merchant an amount equal to five percent (5%) percent of the gross proceeds (excluding Sale Taxes) from the sale of the Additional Agent Goods (the

"<u>Additional Agent Goods Fee</u>"), and Agent shall retain all remaining amounts from the sale of the Additional Agent Goods.  Agent shall pay Merchant its Additional Agent Goods Fee in connection with each weekly sale reconciliation with respect to sales of Additional Agent Goods sold by Agent during each then prior week (or at such other mutually agreed upon time).

Agent and Merchant intend that the transactions relating to the Additional Agent Goods are, and shall be construed as, a true consignment from Agent to Merchant in all respects and not a consignment for security purposes.  Subject solely to Agent's obligations to pay to Merchant the Additional Agent Goods Fee, at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds.  The Additional Agent Goods shall at all times remain subject to the exclusive control of Agent.

Merchant shall, at Agent's sole cost and expense, insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers.  Agent shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods.

Merchant acknowledges, and the Approval Order shall provide, that the Additional Agent Goods shall be consigned to Merchant as a true consignment under Article 9 of the Code.  Agent is hereby granted a first priority security interest in and lien upon (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds *less* the Additional Agent Goods Fee, and which security interest shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Merchant as the consignee therefor, and Agent's security interest in and lien upon such Additional Agent Goods and Additional Agent Goods proceeds).

Notwithstanding anything in this Agreement to the contrary, "Merchandise" shall not include Additional Agent Goods."

With respect to this Amendment, (i) Merchant hereby reaffirms the representations, warranties, and agreements set forth in section H of the Agreement, and (ii) Agent hereby reaffirms the representations, warranties, and agreements set forth in section H of the Agreement.

This Amendment, together with the Agreement, all prior amendments or supplements, and all schedules and exhibits attached hereto and thereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Amendment except as specifically set forth in this Amendment or the Agreement.

If this Amendment is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

*T. Kellan Grant*
_____

By:  T. Kellan Grant
Its:  EVP Commercial Counsel

**AGREED AND ACCEPTED as of the 12th day**
**of February, 2025, intending to be bound to the terms of the Agreement:**

GORDON BROTHERS RETAIL PARTNERS, LLC

_____

By:
Its:

SB360 CAPITAL PARTNERS, LLC

_____

By:
Its:

**AGREED AND ACCEPTED as of the 12th day**
**of February, 2025:**

F21 OpCo, LLC

DocuSigned by:

*Brad Sell*

D9DA973AC102408...
_____

By:     Brad Sell
Its:     Chief Financial Officer

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

_____

By:  T. Kellan Grant
Its:  EVP Commercial Counsel


**AGREED AND ACCEPTED as of the 12th day**
**of February, 2025, intending to be bound to the terms of the Agreement:**

GORDON BROTHERS RETAIL PARTNERS, LLC

_____

By:
Its:

SB360 CAPITAL PARTNERS, LLC

_____

By:  Aaron S. Miller
Its:     President


**AGREED AND ACCEPTED as of the 12th day**
**of February, 2025:**

F21 OpCo, LLC

_____

By:     Brad Sell
Its:     Chief Financial Officer

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

_____

By:  T. Kellan Grant
Its:  EVP Commercial Counsel


**AGREED AND ACCEPTED as of the 12th day**
**of February, 2025, intending to be bound to the terms of the Agreement:**

GORDON BROTHERS RETAIL PARTNERS, LLC

*Richard Edwards*
8DBA48849AC540D...

By:  Richard P. Edwards
Its:  Head of NA Retail


SB360 CAPITAL PARTNERS, LLC

_____

By:
Its:


**AGREED AND ACCEPTED as of the 12th day**
**of February, 2025:**

F21 OpCo, LLC

_____

By:     Brad Sell
Its:     Chief Financial Officer

Docusign Envelope ID: D846F007-066F-43AD-9282-6850C6D300DC

**Forever 21**
**Exhibit A**

Store List

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 10 | Stonewood Center | 223 Stonewood St. | Downey | CA | 90241 | Macerich | 18,031 | 12,296 | 2/12/2025 |
| 13 | Media City Center | 201 E Magnolia Blvd | Burbank | CA | 91502 | Omni Properties LLC | 13,607 | 10,704 | 2/12/2025 |
| 15 | Ontario Mills | 4701 Mills Circle | Ontario | CA | 91764 | Simon Property Group, Inc. | 52,456 | 42,648 | 2/12/2025 |
| 21 | Montclair Plaza | 5060 Montclair Plaza Ln., #2121 | Montclair | CA | 91763 | CIM Group | 15,700 | 11,022 | 2/12/2025 |
| 24 | Moreno Valley Mall | 22500 Town Circle, Suite 1050 | Moreno Valley | CA | 92553 | The Woodmont Company | 21,558 | 14,197 | 2/12/2025 |
| 28 | Northridge Fashion Center | 9301 Tampa Ave, #4 | Northridge | CA | 91324 | Brookfield Properties | 23,970 | 16,955 | 2/12/2025 |
| 37 | Parkway Plz | 415 Parkway Plaza #357 | El Cajon | CA | 92020 | Pacific Retail Capital Partners | 20,020 | 16,796 | 2/12/2025 |
| 40 | Stoneridge Mall | 2249 Stoneridge Mall Rd. | Pleasanton | CA | 94588 | Simon Property Group, Inc. | 21,367 | 15,876 | 2/12/2025 |
| 43 | Eastridge Mall | 2200 Eastridge Loop | San Jose | CA | 95122 | Eastridge Property Holdings, LLC | 15,480 | 11,601 | 2/12/2025 |
| 55 | Staten Island Shopping | 2655 Richmond Ave., Suite 1040 | Staten Island | NY | 10314 | Brookfield Properties | 17,143 | 14,137 | 2/27/2025 |
| 59 | Trumbull Shopping Park | 5065 Main Street, #178 | Trumbull | CT | 06611 | Namdar Realty Group LLC | 21,906 | 18,232 | 2/12/2025 |
| 61 | Montgomery Mall | 7101 Democracy Blvd, Space 1252 | Bethesda | MD | 20817 | Westfield LLC | 21,413 | 16,767 | 2/12/2025 |
| 66 | Great Lakes Crossing | 4160 Baldwin Road Space #426 | Auburn Hills | MI | 48326 | The Taubman Company | 47,203 | 40,260 | 2/27/2025 |
| 69 | Newport Mall | 30 Mall Drive West, #854A | Jersey City | NJ | 07310 | Simon Property Group, Inc. | 22,366 | 18,377 | 2/27/2025 |
| 73 | Governor's Square | 1500 Apalachee Pkwy, Ste 1210 | Tallahassee | FL | 32301 | Brookfield Properties | 13,156 | 10,632 | 2/12/2025 |
| 78 | Jersey Garden | 651 Kapkowski Rd., #315 | Elizabeth | NJ | 07201 | Simon Property Group, Inc. | 58,879 | 45,857 | 2/12/2025 |
| 79 | Green Acres Mall | 2034 Green Acres Mall, Space #108 | Valley Stream | NY | 11581 | Macerich | 14,733 | 11,970 | 2/12/2025 |
| 81 | Countryside | 27001 U.S Highway 19 N., Ste #2030 | Clearwater | FL | 33761 | Jones Lang LaSalle Americas, Inc. | 20,000 | 16,194 | 2/12/2025 |
| 82 | South County Center | 38 South County Center Way | Saint Louis | MO | 63129 | CBL & Associates Properties, Inc. | 6,480 | 4,494 | 2/12/2025 |
| 84 | Montgomery Mall, PA | 189 Montgomery Mall | North Wales | PA | 19454 | Kohan Retail Investment Group | 16,362 | 13,187 | 2/12/2025 |
| 85 | White Marsh Mall | 8200 Perry Hall Blvd, #1235 | Baltimore | MD | 21236 | Spinoso Real Estate Group, LLC | 14,959 | 11,813 | 2/27/2025 |
| 87 | South Shore Mall | 1701 Sunrise Hwy, #D10 | Bay Shore | NY | 11706 | Namdar Realty Group LLC | 16,161 | 13,099 | 2/12/2025 |
| 89 | Palisades Center | 3510 Palisades Center Drive, Ste G307 | West Nyack | NY | 10994 | Pyramid Management Group | 33,136 | 12,942 | 2/12/2025 |
| 93 | Annapolis Mall | 1115 Annapolis Mall #173 | Annapolis | MD | 21401 | Centennial Real Estate Company | 30,487 | 25,736 | 2/12/2025 |
| 95 | Independence Mall | 3500 Oleander Dr. Ste 1069 | Wilmington | NC | 28403 | Brookfield Properties | 10,410 | 8,113 | 2/27/2025 |
| 97 | Fairlane | 18900 Michigan Ave | Dearborn | MI | 48126 | Kohan Retail Investment Group | 28,472 | 22,431 | 2/12/2025 |
| 100 | Briarwood | 602 Briarwood Circle, D101A | Ann Arbor | MI | 48108 | Simon Property Group, Inc. | 15,941 | 10,846 | 2/12/2025 |
| 101 | Westfarms Mall | 155 Westfarms Mall | Farmington | CT | 06032 | The Taubman Company | 22,512 | 18,444 | 2/27/2025 |
| 106 | Quaker Bridge Mall | 174 Quaker Bridge Mall, Space #1003A | Lawrence Township | NJ | 08648 | Simon Property Group, Inc. | 26,902 | 23,156 | 2/12/2025 |
| 109 | Stonecrest | 2929 Turner Hill Road N.E #2460 | Lithonia | GA | 30038 | Urban Retail Properties, LLC | 19,921 | 13,954 | 2/27/2025 |
| 112 | Southland Center | 23000 Eureka Rd Space #1360 | Taylor | MI | 48180 | Brookfield Properties | 22,500 | 17,439 | 2/27/2025 |
| 113 | Connecticut Post | 1201 Boston Post Rd, #2009 | Milford | CT | 06460 | Centennial Real Estate Company | 14,807 | 11,151 | 2/12/2025 |
| 114 | Cielo Vista Mall | 8401 Gateway Blvd West #R0018 | El Paso | TX | 79925 | Simon Property Group, Inc. | 20,732 | 16,565 | 2/12/2025 |
| 115 | Mall in Columbia | 10300 Little Patuxent Parkway | Columbia | MD | 21044 | Brookfield Properties | 8,646 | 5,935 | 2/12/2025 |
| 117 | Lloyd Center | 1046 Lloyd Center, Suite F112 | Portland | OR | 97232 | Urban Renaissance Group | 19,029 | 11,985 | 2/12/2025 |
| 122 | Woodland Mall | 3195 28th St. SE | Grand Rapids | MI | 49512 | PREIT Services, LLC | 26,164 | 18,668 | 2/12/2025 |
| 124 | Southwest Plaza | 8501 West Bowles Ave. | Littleton | CO | 80123 | Brookfield Properties | 13,302 | 9,821 | 2/12/2025 |
| 130 | Mall at Tuttle Crossing | 5043 Tuttle Crossing Blvd Ste 283 | Dublin | OH | 43016 | Namdar Realty Group LLC | 11,258 | 8,321 | 2/27/2025 |
| 132 | Arden Fair | 1689 Arden Way | Sacramento | CA | 95815 | Centennial Real Estate Company | 16,157 | 12,418 | 2/27/2025 |
| 134 | Castleton Square Mall | 6020 E. 82nd St, Ste 1515 | Indianapolis | IN | 46250 | Simon Property Group, Inc. | 25,463 | 18,225 | 2/12/2025 |
| 136 | Great Mall | 450A Great Mall Dr. | Milpitas | CA | 95035 | Simon Property Group, Inc. | 33,334 | 27,843 | 2/12/2025 |
| 138 | Circle Centre Mall | 49 West Maryland Street | Indianapolis | IN | 46204 | Hendricks Group | 10,947 | 7,437 | 2/12/2025 |
| 141 | Oxford Valley Mall | 2300 E Lincoln Hwy Ste 270 | Langhorne | PA | 19047 | Simon Property Group, Inc. | 17,218 | 13,359 | 2/12/2025 |
| 142 | Gurnee Mills | 6170 W. Grand Ave | Gurnee | IL | 60031 | Simon Property Group, Inc. | 24,107 | 19,647 | 2/12/2025 |
| 143 | Concord Mills | 8111 Concord Mills Blvd, Ste #XQA | Concord | NC | 28027 | Simon Property Group, Inc. | 29,367 | 24,810 | 2/27/2025 |
| 144 | Clakamas Town Center | 12000 SE 82nd Ave., Ste #1129 | Happy Valley | OR | 97086 | Brookfield Properties | 33,597 | 29,372 | 2/12/2025 |
| 146 | Dayton Mall | 2700 Miamisburg-Centerville, Space # 300 | Dayton | OH | 45459 | Spinoso Real Estate Group, LLC | 14,502 | 11,228 | 2/12/2025 |

Forever 21
Exhibit A

Store List

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 150 | Palm Desert | 72840 Highway 111, Ste. T-393 | Palm Desert | CA | 92260 | Pacific Retail Capital Partners | 21,944 | 17,020 | 2/12/2025 |
| 153 | Zona Rosa | 7121 N. West 86' Terrace #117 | Kansas City | MO | 64153 | Trademark Property Company | 17,224 | 11,183 | 2/12/2025 |
| 156 | Plaza @ King of Prussia | 160 N. Gulph Rd. #1910 | King Of Prussia | PA | 19406 | Simon Property Group, Inc. | 34,375 | 15,567 | 2/12/2025 |
| 162 | Fox River | 4301 W. Wisconsin Ave. #902 | Appleton | WI | 54913 | Brookfield Properties | 14,369 | 11,680 | 2/12/2025 |
| 165 | Jordan Creek Town Center | 101 Jordan Creek Parkway | West Des Moines | IA | 50266 | Brookfield Properties | 10,951 | 8,098 | 2/12/2025 |
| 167 | Victoria Gardens | 12482 N. Main St. | Rancho Cucamonga | CA | 91739 | Brookfield Properties | 6,985 | 4,556 | 2/27/2025 |
| 172 | Willow Grove Park | 2500 Moreland Rd, Ste 2001 | Willow Grove | PA | 19090 | PREIT Services, LLC | 17,165 | 13,060 | 2/27/2025 |
| 176 | Park Meadows | 8557 Park Meadows Center Drive | Lone Tree | CO | 80124 | Brookfield Properties | 31,596 | 23,123 | 2/12/2025 |
| 179 | Southland | 343 Southland Mall Drive, Space #76 | Hayward | CA | 94545 | Brookfield Properties | 14,045 | 11,355 | 2/12/2025 |
| 181 | Bridgewater Commons | 400 Commons Way | Bridgewater | NJ | 08807 | Bridgewater Commons Mall II, LLC | 4,339 | 2,645 | 2/27/2025 |
| 183 | Imperial Valley Mall | 3451 dogwood Ave, #1117 | El Centro | CA | 92243 | CBL & Associates Properties, Inc. | 13,346 | 9,926 | 2/12/2025 |
| 184 | Grapevine Mills | 3000 Grapevine Mills Parkway | Grapevine | TX | 76051 | Simon Property Group, Inc. | 25,814 | 18,850 | 2/12/2025 |
| 186 | Mall of New Hampshire | 1500 S. Willow St, Space S117B | Manchester | NH | 03103 | Simon Property Group, Inc. | 11,104 | 8,177 | 2/27/2025 |
| 188 | Pembroke Lakes Mall | 11401 Pines Blvd #576 | Pembroke Pines | FL | 33026 | Brookfield Properties | 13,518 | 10,533 | 2/12/2025 |
| 190 | Emerald Square | 999 S. Washington Street | North Attleborough | MA | 02760 | Summit Properties USA | 11,102 | 9,092 | 2/27/2025 |
| 191 | Square One Mall | 1201 Broadway W132 | Saugus | MA | 01906 | Simon Property Group, Inc. | 10,042 | 5,016 | 2/12/2025 |
| 192 | Town Center @ Cobb | 400 Ernest Barrett Parkway, Space #252A | Kennesaw | GA | 30144 | Kohan Retail Investment Group | 23,081 | 18,319 | 2/27/2025 |
| 194 | Northlake Mall | 9801 Northlake Mall Drive Space #201 | Charlotte | NC | 28216 | Spinoso Real Estate Group, LLC | 21,086 | 16,685 | 2/27/2025 |
| 195 | The Shops @ La Cantera | 15900 La Cantera Parkway, Ste 12050 | San Antonio | TX | 78256 | Brookfield Properties | 23,130 | 16,815 | 2/27/2025 |
| 198 | North Point Mall | 1000 North Point Circle Ste 1170 | Alpharetta | GA | 30022 | Trademark Property Company | 13,399 | 9,928 | 2/12/2025 |
| 200 | Swagrass Mills | 12801 W. Sunrise Blvd Ste 555 | Sunrise | FL | 33323 | Simon Property Group, Inc. | 59,397 | 48,335 | 2/12/2025 |
| 202 | Cottonwood Mall | 10000 Coors Blvd, #821A | Albuquerque | NM | 87114 | Spinoso Real Estate Group, LLC | 13,909 | 10,565 | 2/27/2025 |
| 205 | Riverchase Mall | 2700 Riverchase Galleria, Space 2701 | Birmingham | AL | 35244 | Brookfield Properties | 28,528 | 19,702 | 2/12/2025 |
| 207 | Altamonte Mall | 451 E. Altamonte Drive Suite 2113 | Altamonte Springs | FL | 32701 | Brookfield Properties | 26,285 | 18,304 | 2/12/2025 |
| 209 | Franklin Park | 5001 Monroe Street Unit 1800 | Toledo | OH | 43623 | Pacific Retail Capital Partners | 21,932 | 14,370 | 2/12/2025 |
| 210 | Ocean County Mall | 1201 Hooper Ave #1087A | Toms River | NJ | 08753 | Simon Property Group, Inc. | 6,500 | 5,130 | 2/12/2025 |
| 211 | Battlefield Mall | 2825 S. Glenstone, Suite #S03B | Springfield | MO | 65804 | Simon Property Group, Inc. | 15,410 | 12,128 | 2/12/2025 |
| 212 | Great Northern | 560 Great Northern Mall | North Olmsted | OH | 44070 | Starwood Retail Partners LLC | 20,488 | 16,099 | 2/12/2025 |
| 213 | Valley River Center | 293 Valley River Center | Eugene | OR | 97401 | Macerich | 12,466 | 8,393 | 2/12/2025 |
| 214 | Florence Mall | 2028 Florence Mall #2070 | Florence | KY | 41042 | Namdar Realty Group LLC | 5,966 | 4,416 | 2/27/2025 |
| 216 | St. Clair Square | 134 St. Clair Square #112 | Fairview Heights | IL | 62208 | CBL & Associates Properties, Inc. | 12,289 | 8,848 | 2/27/2025 |
| 218 | First Colony | 16535 SW Freeway #550 | Sugar Land | TX | 77479 | Brookfield Properties | 10,022 | 7,626 | 2/27/2025 |
| 219 | Patrick Henry Mall | 12300 Jefferson Ave., Ste #100 | Newport News | VA | 23602 | PREIT Services, LLC | 21,017 | 17,263 | 2/12/2025 |
| 225 | Mayfair Mall | 2500 North Mayfair Road, Space #624 | Wauwatosa | WI | 53226 | Brookfield Properties | 8,475 | 5,751 | 2/27/2025 |
| 228 | Arizona Mills | 5000 S. Arizona Mills Circle, Suite #590 | Tempe | AZ | 85282 | Simon Property Group, Inc. | 30,822 | 25,412 | 2/12/2025 |
| 231 | Discover Mills | 5900 Sugarloaf Parkway, Space 531 | Lawrenceville | GA | 30043 | Simon Property Group, Inc. | 20,152 | 15,446 | 2/27/2025 |
| 232 | Town Center at Boca Raton | 6000 West Glades Road, Space #1166E | Boca Raton | FL | 33431 | Simon Property Group, Inc. | 19,670 | 14,088 | 2/12/2025 |
| 233 | Miami International | 1455 NW 107 Ave, Suite 560A | Doral | FL | 33172 | Simon Property Group, Inc. | 12,876 | 9,748 | 2/12/2025 |
| 234 | Mall of Georgia | 3333 Buford Drive, Space #1058A | Buford | GA | 30519 | Simon Property Group, Inc. | 18,258 | 13,878 | 2/12/2025 |
| 235 | Orland Square | 288 Orland Square Dr. | Orland Park | IL | 60462 | Simon Property Group, Inc. | 9,716 | 6,650 | 2/12/2025 |
| 236 | The Mall at Rockingham Park | 99 Rockingham Park Boulevard, W-143B | Salem | NH | 03079 | Simon Property Group, Inc. | 11,414 | 9,082 | 2/12/2025 |
| 238 | Sherman Oaks Fashion Square | 14006 Riverside Drive, Space #244 | Sherman Oaks | CA | 91423 | Westfield LLC | 22,158 | 17,256 | 2/27/2025 |
| 239 | Brandon Town Center | 565 Brandon Town Center | Brandon | FL | 33511 | Centercorp Management Services Limited | 11,179 | 9,032 | 2/27/2025 |
| 252 | Glenbrook Square | 4201 Coldwater Rd, #D04 | Fort Wayne | IN | 46805 | Spinoso Real Estate Group, LLC | 11,900 | 8,410 | 2/12/2025 |
| 253 | Capital City | 3506 Capital City Mall Drive #D808 | Camp Hill | PA | 17011 | PREIT Services, LLC | 13,894 | 9,418 | 2/27/2025 |
| 255 | Harlem & Irving | 4146-E North Harlem Ave. | Norridge | IL | 60706 | The Harlem Irving Co. | 14,187 | 10,270 | 2/27/2025 |
| 256 | Vancouver Mall | 8700 NE Vancouver Mall Dr., #138 | Vancouver | WA | 98662 | Centennial Real Estate Company | 11,420 | 8,984 | 2/27/2025 |

Docusign Envelope ID: D846F00D7-066F-43AD-9282-6E6DC6D300DC

Hilco Merchant Resources, LLC

2/10/2025

Forever 21
Exhibit A

Store List

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 259 | The Oaks | 6419 Newberry Rd., Space #B16 | Gainesville | FL | 32605 | Brookfield Properties | 28,195 | 22,572 | 2/27/2025 |
| 260 | Coastland | 1704 Tamiami Trail North, Ste A19 | Naples | FL | 34102 | Brookfield Properties | 19,805 | 14,912 | 2/27/2025 |
| 261 | Ridmall | 4800 S. Hulen Street, Space A15 | Fort Worth | TX | 76132 | Brookfield Properties | 15,958 | 11,731 | 2/27/2025 |
| 263 | Eastview | 7979 Pittsford-Victor Rd., Suite #140 | Victor | NY | 14564 | Wilmorite Management Group, LLC | 14,994 | 11,593 | 2/27/2025 |
| 264 | The Shops at Las Americas | 4201 Camino De La Plaza, Suite #138 | San Diego | CA | 92173 | Simon Property Group, Inc. | 10,000 | 8,124 | 2/27/2025 |
| 269 | Lehigh Valley Mall | 230 Lehigh Valley Mall #2087A | Whitehall | PA | 18052 | Simon Property Group, Inc. | 8,553 | 6,341 | 2/12/2025 |
| 270 | Galleria at Sunset | 1300 Sunset Road Space 1230 | Henderson | NV | 89014 | Simon Real Estate Group, LLC | 9,900 | 6,824 | 2/12/2025 |
| 272 | Poughkeepsie Galleria | 2001 South Rd. #181 | Poughkeepsie | NY | 12601 | Pyramid Management Group | 12,018 | 9,639 | 2/12/2025 |
| 273 | University Park Mall | 6501 N. Grape Rd. #274 | Mishawaka | IN | 46545 | Simon Property Group, Inc. | 8,673 | 5,202 | 2/12/2025 |
| 275 | Four Seasons Town Centre | 410 Four Seasons Town Centre, Space #111 | Greensboro | NC | 27427 | Brookfield Properties | 9,281 | 7,291 | 2/27/2025 |
| 276 | Wolfchase Galleria | 2760 N. Germantown Pkwy, Ste 163 | Memphis | TN | 38133 | Simon Property Group, Inc. | 12,986 | 10,116 | 2/12/2025 |
| 277 | Monroeville Mall | 266 Monroeville Mall, Suite 226 | Monroeville | PA | 15146 | CBL & Associates Properties, Inc. | 28,879 | 22,967 | 2/12/2025 |
| 278 | The Crossroads Mall | 6650 South Westnedge Ave #139 | Portage | MI | 49024 | Summit Properties USA | 11,910 | 8,497 | 2/27/2025 |
| 282 | Southpark Mall | 500 Southpark Center #HL54 | Strongsville | OH | 44136 | Spinoso Real Estate Group, LLC | 16,307 | 13,088 | 2/27/2025 |
| 283 | Oakland Mall | 460 W. 14 Mile Road | Troy | MI | 48083 | Oakland Mall, LLC | 20,539 | 15,424 | 2/27/2025 |
| 284 | Solomon Pond Mall | 601 Donald Lynch Blvd. #N133A | Marlborough | MA | 01752 | E3 Realty MA Advisors, LLC | 12,617 | 9,114 | 2/12/2025 |
| 287 | San Tan Village | 2268 E. Williams Field Rd #101 | Gilbert | AZ | 85296 | Macerich | 12,950 | 10,260 | 2/12/2025 |
| 289 | Partridge Creek | 17360 Hall Road #191 | Clinton Township | MI | 48038 | Spinoso Real Estate Group, LLC | 14,910 | 12,801 | 2/12/2025 |
| 291 | Buckland Hills | 194 Buckland Hills Dr. Ste. 1038 | Manchester | CT | 06042 | Spinoso Real Estate Group, LLC | 16,240 | 12,570 | 2/12/2025 |
| 294 | Hanes Mall | 3320 Silas Creek Pkwy #DL450 | Winston-Salem | NC | 27103 | CBL & Associates Properties, Inc. | 16,814 | 13,750 | 2/12/2025 |
| 295 | The Block @ Orange | 20 City Blvd. West #R11 | Orange | CA | 92868 | Simon Property Group, Inc. | 8,616 | 6,733 | 2/12/2025 |
| 297 | North Riverside Park Mall | 7501 West Cermak Rd. STE F9 | North Riverside | IL | 60546 | The Feil Organization | 16,107 | 12,639 | 2/12/2025 |
| 298 | Town East | 2063 Town East #2078 | Mesquite | TX | 75150 | Brookfield Properties | 13,735 | 10,889 | 2/12/2025 |
| 300 | Market Place Shopping Center | 2000 N. Neil St. #520 | Champaign | IL | 61820 | Brookfield Properties | 9,726 | 5,594 | 2/12/2025 |
| 301 | Northwest Arkansas Mall | 4201 N. Shiloh Dr. #1150 | Fayetteville | AR | 72703 | Namdar Realty Group LLC | 9,328 | 6,997 | 2/27/2025 |
| 302 | Westroads Mall | 10000 California Street, Suite #2156 | Omaha | NE | 68114 | Brookfield Properties | 30,796 | 10,956 | 2/12/2025 |
| 305 | Woodland Hills Mall | 7021 S. Memorial Dr. #143B | Tulsa | OK | 74133 | Simon Property Group, Inc. | 11,323 | 8,482 | 2/12/2025 |
| 306 | Oglethorpe Mall | 7804 Abercorn Street, Space #81 | Savannah | GA | 31406 | Brookfield Properties | 9,188 | 7,089 | 2/27/2025 |
| 310 | Pearland Town Center | 11200 Broadway St. #340 | Pearland | TX | 77584 | CBL & Associates Properties, Inc. | 9,304 | 6,710 | 2/27/2025 |
| 311 | South Plains Mall | 6002 Slide Rd #G5 | Lubbock | TX | 79414 | Macerich | 15,419 | 12,271 | 2/12/2025 |
| 314 | Valencia Town Center | 24201 W. Valencia Blvd. #139 | Valencia | CA | 91355 | Westfield LLC | 8,887 | 6,551 | 2/12/2025 |
| 315 | Prime Outlets Int'l | 4951 International Drive, Suite #1C06 | Orlando | FL | 32819 | Simon Property Group, Inc. | 12,500 | 8,071 | 2/12/2025 |
| 316 | Parkway Place | 2801 Memorial Parkway SW #211 | Huntsville | AL | 35801 | CBL & Associates Properties, Inc. | 18,012 | 14,041 | 2/27/2025 |
| 318 | Auburn Mall | 385 Southbridge St., #N500A | Auburn | MA | 01501 | Simon Property Group, Inc. | 11,866 | 9,272 | 2/12/2025 |
| 319 | Post Oak Mall | 1500 Harvey Road, Space #7012 | College Station | TX | 77840 | CBL & Associates Properties, Inc. | 12,145 | 9,233 | 2/27/2025 |
| 320 | Towne East Square | 7700 East Kellogg Drive, Unit 857 | Wichita | KS | 67207 | Simon Property Group, Inc. | 13,717 | 11,090 | 2/12/2025 |
| 322 | Park City Center | 828 Park City Center (Space A-R28) | Lancaster | PA | 17601 | Brookfield Properties | 18,552 | 14,516 | 2/27/2025 |
| 324 | Boise Towne Center | 350 N. Milwaukee, #2060 | Boise | ID | 83704 | Brookfield Properties | 15,837 | 12,267 | 2/12/2025 |
| 325 | Crystal Mall | 850 Hartford Turnpike #R219A | Waterford | CT | 06385 | Namdar Realty Group LLC | 10,276 | 6,650 | 2/12/2025 |
| 331 | Cross Creek Mall | 425 Cross Creek Mall #TA-04 | Fayetteville | NC | 28303 | CBL & Associates Properties, Inc. | 10,229 | 8,286 | 2/27/2025 |
| 332 | Spokane Valley Mall | 14700 East Indiana Ave, Space #2144 | Spokane Valley | WA | 99216 | Brookfield Properties | 13,793 | 9,726 | 2/27/2025 |
| 333 | Jefferson Valley | 650 Lee Blvd. #D118 | Yorktown Heights | NY | 10598 | Washington Prime Group | 12,000 | 8,091 | 2/27/2025 |
| 334 | Plaza Las America | 525 Ave F.D. Roosevelt #326 | San Juan | PR | 00918 | Efonalleden (Plaza Las Americas S. E.) | 37,644 | 31,442 | 2/12/2025 |
| 335 | Cape Cod Mall | 769 Lyonnough Road | Hyannis | MA | 02601 | Simon Property Group, Inc. | 7,350 | 4,724 | 2/12/2025 |
| 336 | Galleria at Crystal Run | 1 Galleria Dr., Space #D207 | Middletown | NY | 10941 | Pyramid Management Group | 17,005 | 12,611 | 2/12/2025 |
| 338 | Legends at Sparks | 1420 Scheels Dr. | Sparks | NV | 89434 | RED Development | 23,170 | 18,175 | 2/12/2025 |
| 340 | Weberstown | 4950 Pacific Ave | Stockton | CA | 95207 | Washington Prime Group | 18,158 | 15,463 | 2/27/2025 |

Docusign Envelope ID: D846F9007-066F-43AD-9282-6B5DC0D300DC

Hilco Merchant Resources, LLC

2/10/2025

Forever 21
Exhibit A

Store List

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 342 | Scottsdale Fashion Square | 7014 E. Camelback Rd., #2433 | Scottsdale | AZ | 85251 | Macerich | 15,369 | 12,508 | 2/12/2025 |
| 343 | Stonestown Galleria | 3251 20th Ave., Space #136 | San Francisco | CA | 94132 | Brookfield Properties | 9,640 | 7,109 | 2/12/2025 |
| 346 | St. Louis Galleria | 2285 Saint Louis Galleria | St. Louis | MO | 63117 | Brookfield Properties | 11,798 | 9,563 | 2/12/2025 |
| 347 | Chicago Ridge | 191 Chicago Ridge Mall Dr., #F-7 | Chicago Ridge | IL | 60415 | Jones Lang LaSalle Americas, Inc. | 12,595 | 9,750 | 2/12/2025 |
| 351 | Camarillo Premium Outlets | 630 Ventura Blvd. #1203 | Camarillo | CA | 93010 | Simon Property Group, Inc. | 16,419 | 15,912 | 2/12/2025 |
| 352 | Augusta Mall | 3450 Wrightsboro Rd, #1200 | Augusta | GA | 30909 | Brookfield Properties | 16,101 | 11,703 | 2/12/2025 |
| 353 | Belden Village | 4343 Belden Village Mall, #A4 | Canton | OH | 44718 | Starwood Retail Partners LLC | 11,318 | 9,097 | 2/12/2025 |
| 354 | Promenade in Temecula | 40820 Winchester Road, Ste #1050 | Temecula | CA | 92591 | Brookfield Properties | 19,124 | 15,272 | 2/12/2025 |
| 358 | Coronado Center | 6600 Menaul Blvd NE, Space #N-011 | Albuquerque | NM | 87110 | Brookfield Properties | 21,183 | 17,751 | 2/27/2025 |
| 360 | Franklin Mills | 1706 Franklin Mills Cir | Philadelphia | PA | 19154 | Simon Property Group, Inc. | 52,013 | 44,960 | 2/12/2025 |
| 365 | Mall of Acadiana | 5725 Johnston St, Space #D-164 | Lafayette | LA | 70503 | Namdar Realty Group LLC | 13,870 | 11,248 | 2/12/2025 |
| 366 | West Acres | 3902 13th Ave South, Ste #1629 | Fargo | ND | 58103 | West Acres Development, LLP | 19,873 | 16,355 | 2/12/2025 |
| 370 | South Shore Plaza | 250 Granite Street, #1300 | Braintree | MA | 02184 | Simon Property Group, Inc. | 33,976 | 26,490 | 2/12/2025 |
| 372 | Cool Springs Galleria | 1800 Galleria Blvd, Ste #2520 | Franklin | TN | 37067 | CBL & Associates Properties, Inc. | 17,154 | 13,568 | 2/12/2025 |
| 374 | Beachwood Place | 26300 Cedar Road | Beachwood | OH | 44122 | Brookfield Properties | 9,371 | 6,700 | 2/12/2025 |
| 375 | Deptford Mall | 1750 Deptford Center Rd, Space #2111 | Deptford Township | NJ | 08096 | Macerich | 20,243 | 15,208 | 2/12/2025 |
| 377 | Columbiana Centre | 100 Columbiana Circle | Columbia | SC | 29212 | Brookfield Properties | 15,290 | 11,532 | 2/12/2025 |
| 378 | Philadelphia | 18 W. Lightcap Rd, Space #101 | Pottstown | PA | 19464 | Simon Property Group, Inc. | 8,995 | 6,299 | 2/12/2025 |
| 379 | The Crossings | 1000 Route 611, Suite G200 | Tannersville | PA | 18372 | Simon Property Group, Inc. | 14,274 | 10,086 | 2/27/2025 |
| 380 | Myrtle Beach | 4634 Factory Stores Blvd, #EE160 | Myrtle Beach | SC | 29579 | Tanger Factory Outlet Centers, Inc. | 10,956 | 7,629 | 2/12/2025 |
| 381 | Gilroy | 8155 Arroyo Circle #1 | Gilroy | CA | 95020 | Simon Property Group, Inc. | 10,000 | 7,040 | 2/12/2025 |
| 382 | 701 Lincoln Road | 701 Lincoln Road | Miami Beach | FL | 33139 | COMCO, LLC | 37,873 | 22,751 | 2/12/2025 |
| 386 | Rockaway Town Square | 301 Mt. Hope Ave., Ste #2094A | Rockaway | NJ | 07866 | Simon Property Group, Inc. | 17,701 | 14,095 | 2/12/2025 |
| 388 | The Walk | 2000 Artic Ave., Suite #500 | Atlantic City | NJ | 08401 | Tanger Factory Outlet Centers, Inc. | 9,937 | 7,056 | 2/12/2025 |
| 391 | Menlo Park | 55 Parsonage Rd., Space #1614A | Edison | NJ | 08837 | Simon Property Group, Inc. | 20,299 | 16,986 | 2/12/2025 |
| 394 | Lenox Square | 3393 Peachtree Rd NE, Ste 3136 | Atlanta | GA | 30326 | Simon Property Group, Inc. | 27,413 | 22,336 | 2/12/2025 |
| 395 | Streets at Southpoint | 6910 Fayetteville Rd, Suite #105 | Durham | NC | 27713 | Brookfield Properties | 19,614 | 13,075 | 2/12/2025 |
| 396 | North East Mall | 1101 Melbourne Rd, Suite 4020 | Hurst | TX | 76053 | Simon Property Group, Inc. | 25,226 | 20,501 | 2/12/2025 |
| 397 | Plaza Carolina | Ave. Jesus M. Fargoso | Carolina | PR | 00983 | Simon Property Group, Inc. | 34,913 | 26,517 | 2/12/2025 |
| 398 | Fayette Mall | 3401 Nicholasville Rd., Suite A100 | Lexington | KY | 40503 | CBL & Associates Properties, Inc. | 19,036 | 16,318 | 2/12/2025 |
| 412 | Alderwood Mall | 3000 184th St. SW, Ste 910 | Lynnwood | WA | 98037 | Brookfield Properties | 24,320 | 18,237 | 2/12/2025 |
| 416 | Visalia Mall | 2055 S. Mooney Blvd. #1608 | Visalia | CA | 93277 | Brookfield Properties | 12,554 | 10,374 | 2/12/2025 |
| 417 | Greenwood Park Mall | 1251 US Highway 31N Space G-15 | Greenwood | IN | 46142 | Simon Property Group, Inc. | 26,107 | 22,908 | 2/12/2025 |
| 418 | Houston Galleria | 5085 Westheimer Road | Houston | TX | 77056 | Simon Property Group, Inc. | 26,997 | 19,159 | 2/12/2025 |
| 419 | Eastland Mall | 800 N. Green River Road, Space #318A | Evansville | IN | 47715 | Macerich | 17,472 | 14,639 | 2/12/2025 |
| 420 | Arbor Place | 6594 Douglas Blvd. | Douglasville | GA | 30135 | CBL & Associates Properties, Inc. | 25,841 | 21,762 | 2/12/2025 |
| 421 | Pier Park | 15575 Starfish St. | Panama City Beach | FL | 32413 | Simon Property Group, Inc. | 23,005 | 19,631 | 2/12/2025 |
| 422 | Bellis Fair | 1 Bellis Fair Parkway, Ste #532 | Bellingham | WA | 98226 | 4th Dimension Properties | 10,000 | 7,730 | 2/12/2025 |
| 424 | Penn Square | 1901 NW Expressway Suite #1889 | Oklahoma City | OK | 73118 | Spinoso Real Estate Group, LLC | 31,255 | 23,301 | 2/12/2025 |
| 425 | Wellington Green | 10300 W. Forest Hill Blvd., Ste 191 | West Palm Beach | FL | 33414 | Simon Property Group, Inc. | 21,295 | 17,513 | 2/27/2025 |
| 427 | Folsom Premium Outlets | 13000 Folsom Blvd., Ste #607 | Folsom | CA | 95630 | Simon Property Group, Inc. | 6,604 | 4,420 | 2/12/2025 |
| 428 | Apache Mall | 1200 12th Street SW, Ste 692 | Rochester | MN | 55902 | Brookfield Properties | 12,686 | 10,407 | 2/12/2025 |
| 431 | Plaza Del Caribe | 2050 Ponce By Pass Suire | Ponce | PR | 00717 | Eñonalledes (Plaza Las Americas S. E.) | 21,257 | 17,010 | 2/12/2025 |
| 432 | Woodburn Outlet | 1001 Arney Road Suite #1000 | Woodburn | OR | 97071 | Simon Property Group, Inc. | 3,950 | 2,966 | 2/27/2025 |
| 435 | Atlas Park | 80-40 Cooper Ave., Suite #A-002 | Glendale | NY | 11385 | Macerich | 14,724 | 12,270 | 2/12/2025 |
| 436 | Meadowood Mall | 5170 Meadowood Mall Circle, Ste. F120A | Reno | NV | 89502 | Simon Property Group, Inc. | 20,022 | 15,338 | 2/12/2025 |
| 437 | Seattle Premium Outlets | 10600 Quil Ceda Blvd. Suite #924 | Tulalip | WA | 98271 | Simon Property Group, Inc. | 9,892 | 7,931 | 2/12/2025 |

Docusign Envelope ID: D846F0007-066F-43AD-8282-6E6DC6D300DC

Hilco Merchant Resources, LLC

2/10/2025

**Forever 21**
**Exhibit A**

**Store List**

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 438 | Rio Grande Valley Premium Ou | 5001 East Expressway 83, Ste 800 | Mercedes | TX | 78570 | Simon Property Group, Inc. | 13,405 | 10,951 | 2/12/2025 |
| 439 | Hamilton Mall | 4403 Black Horse Pike | Mays Landing | NJ | 08330 | Namdar Realty Group LLC | 35,169 | 30,087 | 2/12/2025 |
| 440 | Macerich Outlets of Chicago | 5220 Fashion Outlets Way, Ste #1005 | Rosemont | IL | 60018 | Macerich | 27,819 | 21,360 | 2/12/2025 |
| 444 | Great Lakes Mall | 7850 Mentor Avenue, Suite #806B | Mentor | OH | 44060 | Washington Prime Group | 15,261 | 12,320 | 2/27/2025 |
| 445 | Haywood Mall | 700 Haywood Road | Greenville | SC | 29607 | Simon Property Group, Inc. | 26,854 | 22,745 | 2/12/2025 |
| 446 | Treasure Coast Square | 3080 NW Federal Highway | Jensen Beach | FL | 34957 | Simon Property Group, Inc. | 21,228 | 17,753 | 2/27/2025 |
| 449 | Orlando Premium Outlets | 8249 Vineland Ave, Unit 2201 | Orlando | FL | 32821 | Simon Property Group, Inc. | 24,048 | 19,646 | 2/12/2025 |
| 451 | Dover Mall | 1365 N. Dupont Highway, Suite 4004-A | Dover | DE | 19901 | Simon Property Group, Inc. | 11,570 | 8,806 | 2/12/2025 |
| 453 | Arundel Mills | 7000 Arundel Mills Circle | Hanover | MD | 21076 | Simon Property Group, Inc. | 25,211 | 20,653 | 2/12/2025 |
| 455 | Station Park | 188 North East Promontory, Space J-120 | Farmington | UT | 84025 | Centercal Properties, LLC | 11,173 | 8,438 | 2/12/2025 |
| 459 | Azalea Shopping Center | 4861 Firestone Blvd | South Gate | CA | 90280 | Federal Realty Investment Trust | 18,000 | 14,357 | 2/27/2025 |
| 462 | South Hills Village | 301 South Hills Village, Space 2330A | Pittsburgh | PA | 15241 | Simon Property Group, Inc. | 12,651 | 9,420 | 2/12/2025 |
| 463 | Millcreek Mall | 5800 Peach St, Unit #450 | Erie | PA | 16565 | Cafaro Management Company | 18,901 | 14,847 | 2/12/2025 |
| 465 | Outlets of Mississippi | 200 Bass Pro Drive Ste 105 | Pearl | MS | 39208 | Spectrum Capital R/E | 15,120 | 12,414 | 2/12/2025 |
| 467 | Pierre Bossier Mall | 2950 E. Texas Street Ste 704 Suite D | Bossier City | LA | 71111 | Kohan Retail Investment Group | 33,544 | 27,443 | 2/27/2025 |
| 469 | Las Tiendas Plaza | 700 East Expressway 83, Suite C | McAllen | TX | 78503 | Mimco Inc. | 22,500 | 17,730 | 2/12/2025 |
| 472 | Palm Beach Outlets | 1795 Palm Beach Lakes Blvd. #W500 | West Palm Beach | FL | 33401 | Tanger Factory Outlet Centers, Inc. | 15,475 | 12,153 | 2/12/2025 |
| 478 | Jacksonville Mall | 353 Jacksonville Mall, Suite L7 | Jacksonville | NC | 28546 | PREIT Services, LLC | 14,117 | 11,157 | 2/12/2025 |
| 479 | University Town Center, FL | 140 University Town Center Dr. Suite 215 | Sarasota | FL | 34243 | The Taubman Company | 10,757 | 7,818 | 2/12/2025 |
| 480 | Springfield Town Center | 6531 Springfield Mall | Springfield | VA | 22150 | PREIT Services, LLC | 24,335 | 16,656 | 2/12/2025 |
| 481 | Fashion Outlets of Niagara Fall | 1965 Fashion Blvd. Suite 238 | Niagara Falls | NY | 14304 | Macerich | 19,059 | 15,612 | 2/12/2025 |
| 483 | Southlake Mall | 2060 Southlake Mall | Merrillville | IN | 46410 | Pacific Retail Capital Partners | 23,096 | 17,201 | 2/27/2025 |
| 484 | Tulare Outlet Center | 1695 Rutherford Street, Space A010 | Tulare | CA | 93274 | Craig Realty Group | 7,343 | 5,934 | 2/12/2025 |
| 487 | Dulles Town Center | 21100 Dulles Town Circle, Suite 206 | Dulles | VA | 20166 | Centennial Real Estate Company | 13,580 | 9,942 | 2/27/2025 |
| 489 | Westgate Mall | 7701 West Interstate 40, Ste. 542 | Amarillo | TX | 79121 | Namdar Realty Group LLC | 11,705 | 8,586 | 2/27/2025 |
| 490 | Viewmont Mall | 100 Viewmont Mall, Space 804 | Scranton | PA | 18508 | PREIT Services, LLC | 15,133 | 11,871 | 2/12/2025 |
| 495 | Riverhead Outlets | 200 Tanger Mall Drive, Suite 804 | Riverhead | NY | 11901 | Tanger Factory Outlet Centers, Inc. | 8,700 | 5,882 | 2/12/2025 |
| 496 | San Marcos Outlets | 4015 Interstate 35th Frontage Road # 740 | San Marcos | TX | 78666 | Tanger Factory Outlet Centers, Inc. | 9,000 | 7,562 | 2/12/2025 |
| 499 | Avenue at Murfreesboro (F21 | 2615 Medical Center Parkway, Ste. 2300 | Murfreesboro | TN | 37129 | Big V Property Group | 14,251 | 10,956 | 2/12/2025 |
| 602 | Desert Hills Premium Outlets | 48650 Seminole Drive, Suite 900 | Cabazon | CA | 92230 | Simon Property Group, Inc. | 7,189 | 6,224 | 2/27/2025 |
| 604 | Peachtree Mall | 3501 Manchester Expressway Space 53 | Columbus | GA | 31909 | Brookfield Properties | 10,018 | 7,448 | 2/12/2025 |
| 609 | Las Catalinas | PR52 Esquina PR156, Suite 611 | Caguas | PR | 00725 | Urban Edge Properties | 13,773 | 10,126 | 2/12/2025 |
| 611 | Puerto Rico Outlets | 1 Premium Outlets Blvd | Barceloneta | PR | 00617 | Simon Property Group, Inc. | 10,349 | 7,511 | 2/12/2025 |
| 613 | San Francisco Premium Outlet | 3620 Livermore Outlets Drive | Livermore | CA | 94551 | Simon Property Group, Inc. | 7,742 | 5,734 | 2/12/2025 |
| 615 | Outlets At The Pike | 80 Bay Street | Long Beach | CA | 90802 | Site Centers Corp. | 12,379 | 9,299 | 2/12/2025 |
| 617 | Tempe Marketplace | 2000 East Rio Salado Parkway, Suite 1016 | Tempe | AZ | 85281 | Vestar Property Management | 12,705 | 9,304 | 2/12/2025 |
| 621 | Foxwoods Outlets | 455 Trolley Line Blvd. Suite 170 | Mashantucket | CT | 06338 | Tanger Factory Outlet Centers, Inc. | 8,166 | 6,069 | 2/12/2025 |
| 626 | Shops at Park Lane | 8166 Park Lane, Ste. 110 | Dallas | TX | 75231 | Northwood Retail, LLC | 19,603 | 14,652 | 2/12/2025 |
| 627 | Osceola Crosslands | 620 Center View Blvd. | Kissimmee | FL | 34741 | O'Connor Capital Partners | 24,663 | 20,072 | 2/27/2025 |
| 630 | Fayette Pavilion | 121 Pavilion Pkwy, Ste. A | Fayetteville | GA | 30214 | Crawford Square Property Management | 20,000 | 15,336 | 2/12/2025 |
| 631 | Winter Garden Village | 3040 Daniel Rd. Unit 220C | Winter Garden | FL | 34787 | Site Centers Corp. | 20,158 | 13,685 | 2/12/2025 |
| 637 | Tucson Premium Outlets | 6401 W. Marana Center Blvd. Ste. 815 | Tucson | AZ | 85742 | Simon Property Group, Inc. | 10,000 | 6,801 | 2/12/2025 |
| 645 | Savannah Outlets | 200 Tanger Outlets Blvd. Ste. 191 | Pooler | GA | 31322 | Tanger Factory Outlet Centers, Inc. | 14,000 | 10,527 | 2/12/2025 |
| 649 | Valley Mall | 2529 Main Street, Ste. 128 | Union Gap | WA | 98903 | Centercal Properties, LLC | 12,564 | 8,351 | 2/12/2025 |
| 665 | Hillside Village Aka Uptown Vil | 305 West 1382 | Cedar Hill | TX | 75104 | PREP Property Group | 17,484 | 12,589 | 2/27/2025 |
| 672 | Monte Vista Crossings | 2693 Countryside Drive | Turlock | CA | 95380 | GRE Management Services | 18,000 | 14,158 | 2/12/2025 |
| 676 | Santa Fe Place | 4250 Cerrillos Rd. #1030 | Santa Fe | NM | 87507 | Spinoso Real Estate Group, LLC | 15,724 | 10,993 | 2/27/2025 |

Docusign Envelope ID: D846F0007-066F-43AD-8282-6E6DC0D300DC

Hilco Merchant Resources, LLC

**Forever 21**

**Exhibit A**

**Store List**

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 679 | Warwick Mall | 400 Bald Hill Road | Warwick | RI | 02886 | Bliss Properties, Inc. | 15,844 | 11,522 | 2/27/2025 |
| 681 | Southlake Mall | 1000 Southlake Circle | Morrow | GA | 30260 | Vintage Real Estate, LLC | 23,620 | 18,265 | 2/27/2025 |
| 684 | Fashion Place | 6191 State St, Ste 1930 | Murray | UT | 84107 | Brookfield Properties | 10,217 | 7,177 | 2/27/2025 |
| 685 | The Collection At Riverpark | 520 Town Center Drive | Oxnard | CA | 93036 | Centercal Properties, LLC | 16,182 | 12,258 | 2/27/2025 |
| 694 | Foothills Mall | 215 E. Foothills Pkwy # 620 | Fort Collins | CO | 80525 | Prism Places, Inc. | 15,309 | 11,465 | 2/27/2025 |
| 706 | Beverly Center | 8500 Beverly Blvd., Ste 835 | Los Angeles | CA | 90048 | The Taubman Company | 33,232 | 21,968 | 2/12/2025 |
| 707 | Woodfield Shopping Center | 5 Woodfield Mall, Space D116 | Schaumburg | IL | 60173 | Simon Property Group, Inc. | 21,628 | 16,155 | 2/27/2025 |
| 709 | The Mall at Millenia | 4200 Conroy Rd Ste #006 | Orlando | FL | 32839 | The Forbes Company | 17,605 | 13,673 | 2/12/2025 |
| 712 | Smith Haven Mall | 313 Smith Haven Mall, Space #M05 | Lake Grove | NY | 11755 | Simon Property Group, Inc. | 17,592 | 10,977 | 2/12/2025 |
| 713 | Fashion City @ Pentagon | 1100 S. Hayes St. | Arlington | VA | 22202 | Simon Property Group, Inc. | 23,317 | 16,707 | 2/12/2025 |
| 714 | Willow Brook | 7925 FM 1960 Rd West | Houston | TX | 77070 | Brookfield Properties | 19,655 | 15,183 | 2/27/2025 |
| 717 | Carolina Place | 11025 Carolina Place Parkway | Pineville | NC | 28134 | Brookfield Properties | 18,485 | 14,614 | 2/27/2025 |
| 718 | Woodbridge Center Mall | 173 Woodbridge Center Drive | Woodbridge | NJ | 07095 | Spinoso Real Estate Group, LLC | 21,687 | 17,834 | 2/12/2025 |
| 719 | La Palmera | 5488 S. Padre Island Dr. | Corpus Christi | TX | 78411 | Trademark Property Company | 24,261 | 17,402 | 2/27/2025 |
| 720 | Del Amo Fashion Center | 3525 W. Carson St. #184 | Torrance | CA | 90503 | Simon Property Group, Inc. | 20,217 | 14,333 | 2/12/2025 |
| 723 | Washington Square | 9601 SW Washington Square Rd | Tigard | OR | 97223 | Macerich | 18,329 | 10,875 | 2/12/2025 |
| 724 | University Mall | 575 E. University Parkway #E91 | Orem | UT | 84097 | Woodbury Corporation | 20,438 | 14,625 | 2/27/2025 |
| 726 | Old Orchard | 4999 Old Orchard Center #I6 | Skokie | IL | 60077 | Westfield LLC | 20,009 | 16,208 | 2/12/2025 |
| 727 | Main Place | 2800 N. Main St. #201 | Santa Ana | CA | 92705 | Centennial Real Estate Company | 13,860 | 9,694 | 2/12/2025 |
| 729 | Hollywood & Highland | 6801 Hollywood Blvd. #2C-271 | Los Angeles | CA | 90028 | DJM Capital Partners, Inc | 11,000 | 7,875 | 2/12/2025 |
| 731 | Crabtree Valley Mall | 4325 Glenwood Ave #1093 | Raleigh | NC | 27612 | Pacific CVM Management, LLC | 21,176 | 17,256 | 2/27/2025 |
| 732 | Lakeside Shopping Center | 3301 Veterans Memorial Blvd Space #54F | Metairie | LA | 70002 | The Feil Organization | 15,094 | 12,632 | 2/12/2025 |
| 733 | Park Plaza Mall | 6000 W. Markham St. #1050 | Little Rock | AR | 72205 | The Woodmont Company | 24,926 | 19,486 | 2/12/2025 |
| 734 | Oakwood Center | 197 Westbank Expressway #1013 | Gretna | LA | 70056 | Brookfield Properties | 25,000 | 19,657 | 2/12/2025 |
| 735 | Garden State Plaza | 1 Garden State Plaza, Space #B11 | Paramus | NJ | 07652 | Westfield LLC | 38,218 | 30,844 | 2/12/2025 |
| 736 | Oak Park Mall | 11799 W. 95th St. | Overland Park | KS | 66214 | CBL & Associates Properties, Inc. | 21,301 | 15,947 | 2/12/2025 |
| 742 | Cumberland Mall | 1429 Cumberland Mall | Atlanta | GA | 30339 | Brookfield Properties | 25,748 | 20,653 | 2/27/2025 |
| 743 | Chandler Fashion Center | 3111 West Chandler Blvd | Chandler | AZ | 85226 | Macerich | 29,198 | 23,079 | 2/27/2025 |
| 744 | Fair Oaks | 11750 Fair Oaks #H227 | Fairfax | VA | 22033 | Olshan Properties | 23,723 | 18,006 | 2/12/2025 |
| 745 | Perimeter Mall | 4400 Ashford Dunwoody Rd., Space #1315 | Atlanta | GA | 30346 | Brookfield Properties | 13,211 | 9,129 | 2/27/2025 |
| 749 | Lynnhaven Mall | 701 Lynnhaven Parkway, Space #E07A | Virginia Beach | VA | 23452 | Brookfield Properties | 25,035 | 17,646 | 2/12/2025 |
| 750 | Park Place | 5870 E. Broadway Boulevard | Tucson | AZ | 85711 | Pacific Retail Capital Partners | 18,449 | 14,940 | 2/27/2025 |
| 751 | Southcenter Mall | 836 Southcenter Mall | Tukwila | WA | 98188 | Westfield LLC | 26,611 | 7,069 | 2/12/2025 |
| 752 | Willowbrook Mall | 1842 Willowbrook Mall, Space #1275 | Wayne | NJ | 07470 | Brookfield Properties | 15,555 | 13,220 | 2/12/2025 |
| 753 | Plaza Bonita | 3030 Plaza Bonita Rd., #2100 | National City | CA | 91950 | Westfield LLC | 20,000 | 13,810 | 2/12/2025 |
| 757 | The Mall at Robinson | 100 Robinson Centre Dr. , Space #2800 | Pittsburgh | PA | 15205 | Kohan Retail Investment Group | 15,833 | 11,972 | 2/12/2025 |
| 758 | The Parks @ Arlington | 3811 S. Cooper St. #1020 | Arlington | TX | 76015 | Brookfield Properties | 39,750 | 34,070 | 2/12/2025 |
| 759 | Towson Town Center | 825 Dulaney Valley Rd., Space #1405 | Towson | MD | 21204 | Brookfield Properties | 25,210 | 20,854 | 2/27/2025 |
| 760 | Parkdale Mall | 6155 Eastex Freeway, Suite D-420 | Beaumont | TX | 77706 | CBL & Associates Properties, Inc. | 23,999 | 20,898 | 2/12/2025 |
| 761 | Mall of Louisiana | 6401 Bluebonnet Blvd., Space 1002 | Baton Rouge | LA | 70836 | Brookfield Properties | 26,885 | 20,362 | 2/12/2025 |
| 763 | The Shoppes @ Chino Hills | 13860 City Center Dr., Space #5085 | Aurora | IL | 91709 | Olshan Properties | 20,880 | 15,732 | 2/12/2025 |
| 765 | The Greene Town Center | 69 Chestnut St., Space #B112 & #8212 | Beavercreek | OH | 45440 | Centennial Real Estate Company | 21,051 | 15,041 | 2/12/2025 |
| 766 | Valley Fair | 2855 Stevens Creek Blvd, Unit #2522 | Santa Clara | CA | 95050 | Westfield LLC | 15,362 | 11,571 | 2/12/2025 |
| 770 | West County Center | 9 West County Center | Des Peres | MO | 63131 | CBL & Associates Properties, Inc. | 20,000 | 15,451 | 2/12/2025 |
| 771 | Northshore Mall | 210 Andover Street, Space #W169B | Peabody | MA | 01960 | Simon Property Group, Inc. | 40,000 | 29,420 | 2/12/2025 |
| 772 | Holyoke Mall | 50 Holyoke Street, Space #C-342 | Holyoke | MA | 01040 | Pyramid Management Group | 15,792 | 11,938 | 2/27/2025 |

Docusign Envelope ID: D846F007-066F-43AD-9282-6E6DC6D300DC

Hilco Merchant Resources, LLC

2/10/2025

Forever 21
Exhibit A

Store List

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 773 | Meadows Mall | 4300 Meadows Lane, Space #2380 | Las Vegas | NV | 89107 | Brookfield Properties | 16,957 | 13,559 | 2/27/2025 |
| 775 | Cross Country | 8040 Mall Walk | Yonkers | NY | 10704 | Marx Realty and Development Co | 26,373 | 20,427 | 2/12/2025 |
| 776 | City Mills | 5000 Arbor Place, Space #330C | Kokkers | TX | 77494 | Simon Property Group, Inc. | 28,817 | 18,317 | 2/27/2025 |
| 776 | Flatirn Crossing | 51 West Flat Iron Crossing Dr., #ANC04 | Broomfield | CO | 80021 | Macerich | 55,257 | 46,084 | 2/12/2025 |
| 779 | Dallas Galleria | 13350 Dallas Parkway #2840 | Dallas | TX | 75240 | Constance Kneule Madden | 30,480 | 24,560 | 2/27/2025 |
| 780 | Northbrook Court | 2270 Northbrook Court | Northbrook | IL | 60062 | Brookfield Properties | 11,071 | 7,525 | 2/12/2025 |
| 781 | Johnson City | 2011 North Roan St., Space #H5 | Johnson City | TN | 37601 | Washington Prime Group | 22,229 | 18,589 | 2/12/2025 |
| 783 | Burlington Mall | 75 Middlesex Turnpike, Space #1065A | Burlington | MA | 01803 | Simon Property Group, Inc. | 22,606 | 19,128 | 2/12/2025 |
| 784 | Culver City (Fox Hills) | 6000 Sepulveda Blvd., Space #1331 | Culver City | CA | 90230 | Westfield LLC | 31,472 | 22,923 | 2/12/2025 |
| 785 | Kings Plaza Mall | 5301 Kings Plaza #210 | Brooklyn | NY | 11234 | Macerich | 22,802 | 17,733 | 2/27/2025 |
| 786 | Roosevelt Field Mall | 630 Old Country Rd | Garden City | NY | 11530 | Simon Property Group, Inc. | 28,775 | 18,162 | 2/12/2025 |
| 789 | Christiana Mall | 162 Christiana Mall, Space #1466 | Newark | DE | 19702 | Brookfield Properties | 27,300 | 24,559 | 2/12/2025 |
| 790 | Barton Creek Square | 2901 S. Capital of Texas Highway, #M06A | Austin | TX | 78746 | Simon Property Group, Inc. | 17,852 | 14,386 | 2/27/2025 |
| 791 | Potomac Square | 2700 Potomac Mills, Space #601 | Woodbridge | VA | 22192 | Simon Property Group, Inc. | 32,001 | 23,350 | 2/12/2025 |
| 793 | Florida Mall | 8001 S. Orange Blossom Trail | Orlando | FL | 32809 | Simon Property Group, Inc. | 14,912 | 10,514 | 2/27/2025 |
| 795 | Cherry Hill Mall | 2000 Route 38 | Cherry Hill | NJ | 08002 | PREIT Services, LLC | 25,950 | 20,719 | 2/12/2025 |
| 796 | Twelve Oaks Mall | 27434 Novi Road | Novi | MI | 48377 | The Taubman Company | 22,996 | 21,000 | 2/12/2025 |
| 797 | The Oaks | 350 W. Hillcrest Drive | Thousand Oaks | CA | 91360 | Macerich | 7,975 | 5,172 | 2/12/2025 |
| 799 | West Covina Shopping Center | 112 Plaza Drive, Suite #326 | West Covina | CA | 91790 | Pacific Retail Capital Partners | 33,873 | 25,193 | 2/12/2025 |
| 2113 | La Plaza | 2200 S 10th Street, Ste# B48 | McAllen | TX | 78503 | Simon Property Group, Inc. | 12,000 | 8,997 | 2/12/2025 |
| 2116 | Empire Mall | 4001 W 41st Street | Sioux Falls | SD | 57106 | Simon Property Group, Inc. | 8,240 | 5,585 | 2/12/2025 |
| 2118 | Atlantic Station | 231 18TH STREET, Suite 565 | Atlanta | GA | 30363 | Hines Global REIT | 21,201 | 13,473 | 2/12/2025 |
| 2119 | Dartmouth Mall | 200 N Dartmouth Mall | Dartmouth | MA | 02747 | PREIT Services, LLC | 11,303 | 8,197 | 2/12/2025 |
| 2121 | Shops at Carlsbad | 2525 El Camino Real, Space #102 | Carlsbad | CA | 92008 | Brookfield Properties | 24,226 | 15,829 | 2/12/2025 |
| 2122 | Pheasant Lane | 310 Daniel Webster Hwy | Nashua | NH | 03060 | Simon Property Group, Inc. | 10,569 | 6,940 | 2/12/2025 |
| 2130 | Tanger Locust Grove | 1000 Tanger Drive, Ste. #101 | Locust Grove | GA | 30248 | Tanger Factory Outlet Centers, Inc. | 15,000 | 11,072 | 2/12/2025 |
| 2134 | Santa Monica Place | 395 Santa Monica Place, Spae # 220 | Santa Monica | CA | 90401 | Macerich | 9,712 | 6,731 | 2/12/2025 |
| 2136 | Carriage Crossing | 4674 Merchandts Park Circle, , Spaze 721 | Collierville | TN | 38017 | CE Collierville, LLC | 19,383 | 14,024 | 2/12/2025 |
| 2139 | Philadelphia Fashion Outlets | 907-937A Market Street #2175 | Philadelphia | PA | 19107 | Macerich | 11,820 | 7,818 | 2/12/2025 |
| 2140 | Tanger Deerpark | 152 The Arches Circle, Ste. 924 | Deer Park | NY | 11729 | Tanger Factory Outlet Centers, Inc. | 9,860 | 6,927 | 2/12/2025 |
| 2147 | Outlets Of Des Moines | 801 Bass Pro Dr NW | Altoona | IA | 50009 | New England Development | 15,496 | 11,521 | 2/12/2025 |
| 2149 | 435 Seventh Avenue - Penn Sta | 435 Seventh Ave | New York | NY | 10120 | Vornado Realty Trust | 42,595 | 21,908 | 2/27/2025 |
| 2152 | Denver Premium Outlets | 13801 Grant Street, Space #550 | Thornton | CO | 80023 | Simon Property Group, Inc. | 13,337 | 9,723 | 2/27/2025 |
| 2153 | Allen Premium Outlets | 820 W. Stacy Rd., Space #602 | Allen | TX | 75013 | Simon Property Group, Inc. | 12,474 | 7,195 | 2/12/2025 |
| 2154 | Woodbury Premium Outlets | 223 Red Apple Ct., Space #D223 | Central Valley | NY | 10917 | Simon Property Group, Inc. | 8,510 | 5,943 | 2/27/2025 |
| 2155 | Grove City Premium Outlets | 1911 Leesburg Grove City Road | Grove City | PA | 16127 | Simon Property Group, Inc. | 11,278 | 7,835 | 2/12/2025 |
| 2157 | Norfolk Premium Outlets | 1600 Premium Outlets Blvd | Norfolk | VA | 23502 | Simon Property Group, Inc. | 12,974 | 9,510 | 2/12/2025 |
| 2163 | Columbia Center | 1321 N Columbia Center Blvd | Kennewick | WA | 99336 | Simon Property Group, Inc. | 11,756 | 8,251 | 2/12/2025 |
| 2175 | Tanger Outlets Foley | 2601 S. McKenzie St. #266 | Foley | AL | 36536 | Tanger Factory Outlet Centers, Inc. | 12,040 | 9,003 | 2/12/2025 |
| 2185 | The Westchester Mall | 125 Westchester Ave | White Plains | NY | 10601 | Simon Property Group, Inc. | 8,173 | 4,633 | 2/27/2025 |
| 2186 | Las Vegas North Premium Out | 875 Grand Central Parkway South | Las Vegas | NV | 89106 | Simon Property Group, Inc. | 17,660 | 12,728 | 2/27/2025 |
| 2187 | Gran Plaza Outlets | 888 West 2nd Street | Calexio | CA | 92231 | Excel Property Mgmt Services, Inc. | 14,950 | 10,934 | 2/12/2025 |
| 2188 | Chicago Premium Outlets | 1650 Premium Outlets Blvd | Aurora | IL | 60502 | Simon Property Group, Inc. | 17,689 | 12,638 | 2/12/2025 |
| 2190 | FLORIDA KEYS OUTLET MARKE | 250 East Palm Dr | Florida City | FL | 33034 | Simon Property Group, Inc. | 12,960 | 9,156 | 2/27/2025 |
| 2191 | LEESBURG PREMIUM OUTLET, | 41 Fort Evans Road NE | Leesburg | VA | 20176 | Simon Property Group, Inc. | 10,800 | 7,890 | 2/12/2025 |
| 2192 | THE OUTLETS SHOPPES AT AT | 915 Ridgewalk Parkway | Woodstock | GA | 30188 | CBL & Associates Properties, Inc. | 10,500 | 7,649 | 2/12/2025 |
| 2193 | OUTLETS AT TEJON | 5701 Outlets at Tejon Ranch Pkwy | Arvin | CA | 93203 | TRCC-Rock Outlet Center, LLC | 12,397 | 8,730 | 2/27/2025 |

Docusign Envelope ID: D846F0D07-066F-43AD-9282-665DC0D300DC

Forever 21
Exhibit A

Store List

| Loc # | Name | Address | City | State | Zip | Landlord | Gross Sq. Ft. | Selling Sq. Ft. | Planned Store Commencement Date |
|---|---|---|---|---|---|---|---|---|---|
| 3002 | Yorktown Center | 300 Yorktown Center | Lombard | IL | 60148 | Pacific Retail Capital Partners | 33,193 | 24,185 | 2/12/2025 |
| 3003 | Walden Galleria | 1 Walden Galleria #TH110 | Buffalo | NY | 14225 | Pyramid Management Group | 35,098 | 21,442 | 2/12/2025 |
| 3004 | Water Tower Place | 835 N. Michigan, Space #6035 & 7025 | Chicago | IL | 60611 | M&J Willow Property LLC | 35,739 | 26,184 | 2/12/2025 |
| 3006 | Times Square | 1540 Broadway | New York | NY | 10036 | Vornado Realty Trust | 91,257 | 40,195 | 2/12/2025 |
| 3505 | Tucson Mall | 4500 North Oracle Road | Tucson | AZ | 85705 | Brookfield Properties | 14,677 | 10,893 | 2/27/2025 |
| 3506 | Mall Del Norte | 5300 San Dario Ave, Suite 2004 | Laredo | TX | 78041 | CBL & Associates Properties, Inc. | 19,398 | 14,693 | 2/27/2025 |
| 3509 | Montebello Town Center | 1800 Montebello Town Center | Montebello | CA | 90640 | Spinoso Real Estate Group, LLC | 81,619 | 33,473 | 2/12/2025 |
| 3510 | Lakewood Center Mall | 326 Lakewood Center Mall | Lakewood | CA | 90712 | Macerich | 80,688 | 58,956 | 2/12/2025 |
| 3511 | Cerritos | 200 Los Cerritos Center | Cerritos | CA | 90703 | Macerich | 85,691 | 43,831 | 2/12/2025 |
| 3515 | Inland Center | 200 Inland Dr. | San Bernardino | CA | 92408 | Macerich | 51,420 | 32,063 | 2/12/2025 |
| 3524 | Fresno Fashion Fair | 755 East Shaw Ave. | Fresno | CA | 93710 | Macerich | 56,674 | 44,009 | 2/12/2025 |
| 3525 | Valley Plaza | 2801 Ming Ave. | Bakersfield | CA | 93304 | Brookfield Properties | 97,311 | 49,566 | 2/12/2025 |
| 3526 | Fashion Show | 3200 Las Vegas Blvd | Las Vegas | NV | 89109 | Brookfield Properties | 111,220 | 81,159 | 2/12/2025 |
| 3527 | The Woodlands Mall | 1201 Lake Woodland Dr., Ste #100 | The Woodlands | TX | 77380 | Brookfield Properties | 85,150 | 65,767 | 2/12/2025 |
| 3528 | Baybrook Mall | 1408 Baybrook Mall | Friendswood | TX | 77546 | Brookfield Properties | 81,772 | 63,319 | 2/12/2025 |
| 3529 | North Star Mall | 7400 San Pedro Avenue | San Antonio | TX | 78216 | Brookfield Properties | 31,290 | 24,410 | 2/27/2025 |
| 3531 | Mall St. Matthews | 5000 Shelbyville Road | Louisville | KY | 40207 | Brookfield Properties | 27,470 | 22,089 | 2/27/2025 |
| 3534 | Tacoma Mall | 4502 S. Steele St., Ste #426B | Tacoma | WA | 98409 | Simon Property Group, Inc. | 15,867 | 11,347 | 2/12/2025 |
| 3538 | Galleria at Tyler | 3700 Galleria at Tyler Mall | Riverside | CA | 92503 | Macy's West Stores, LLC | 155,414 | 65,043 | 2/12/2025 |
| 3539 | The Shops At Mission Viejo | 555 The Shops at Mission Viejo | Mission Viejo | CA | 92691 | Simon Property Group, Inc. | 13,040 | 8,622 | 2/12/2025 |
| 3541 | Deerbrook Mall | 20131 Highway 59 North, Suite #2290 | Humble | TX | 77338 | Brookfield Properties | 41,937 | 29,953 | 2/12/2025 |
| 3542 | Santa Anita | 400 South Baldwin Avenue | Arcadia | CA | 91007 | Avison Young Southern California Ltd | 117,817 | 48,559 | 2/12/2025 |
| 6004 | Freehold Raceway | 3710 Route 9, Suite #1000 | Freehold | NJ | 07728 | Macerich | 19,586 | 14,503 | 2/12/2025 |
| 6006 | Sun Valley | 329 Sun Valley Mall, Suite #121 | Concord | CA | 94520 | The Taubman Company | 23,608 | 19,611 | 2/12/2025 |
| 6008 | South Coast Plaza | 3333 Bristol Ave. | Costa Mesa | CA | 92626 | S-Tract Property | 43,011 | 31,837 | 2/12/2025 |
| 6011 | Natick Mall | 1245 Worcester St., Suite 3030 | Natick | MA | 01760 | Brookfield Properties | 33,288 | 22,970 | 1/0/1900 |
| **355** | | | | | | | **21,215** | **15,503** | |

Docusign Envelope ID: D846F0D07-066F-43AD-8382-665DC0ED30D0C

## Forever 21
### Exhibit B

| Expense Budget (1) |
|---|

**Advertising**

| | |
|---|---:|
| Digital & Media | 2,122,500 |
| Signs (2) | 300,000 |
| Sign Walkers | 586,875 |
| Subtotal Advertising | 3,009,375 |

**Supervision**

| | |
|---|---:|
| Fees / Wages / Expenses (3) | 3,287,229 |
| Subtotal Supervision | 3,287,229 |

**Miscellaneous**

| | |
|---|---:|
| Miscellaneous /Legal (4) | 75,000 |
| Subtotal Miscellaneous | 75,000 |
| | |
| Total Expenses | 6,371,604 |

Notes:

1. This Expense Budget contemplates a sale term of February, 12, 2025 through April 30, 2025.  The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

2. Includes Sales Tax.
3. Includes Deferred Compensation and Insurance.
4. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, shall be in addition to and not part of the budgeted legal expenses.

**EXHIBIT 2**

**Sale Guidelines**

# SALE GUIDELINES[1]

A.      The Store Closing Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

B.      The Store Closing Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Store Closing Sales shall be conducted on Sunday unless the Merchant had been operating such Closing Store on a Sunday.

C.      On "shopping center" property, the Agent shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; *provided* that Agent may solicit customers in the Closing Stores themselves. On "shopping center" property, the Agent shall not use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

D.      The Merchant and the Agent may advertise the Sale as a "store closing" "sale on everything", "everything must go", or similar themed sale, or "going out of business."  The Agent may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.

E.      Agent shall be permitted to utilize display, hanging signs, and interior banners in connection with the Store Closing Sales; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and the Agent shall not use neon or day-glo on its display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Merchant and the Agent shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Store Closing Sales is being conducted only at the affected Closing Store, shall not be wider than the storefront of the Closing Store. In addition, the Merchant and the Agent shall be permitted to utilize sign walkers and A-frames in a safe and professional manner and in accordance with the terms of the Interim Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement.

F.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

G.      Except with respect to the hanging of exterior banners, the Agent shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

H.      The Agent shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease. No property of the landlord of a Closing Store shall be removed or sold

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Debtors' Motion for Entry of (I) Interim Order Authorizing (A) the Conduct of the Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances and (B) Granting Related Relief, and (II) Final Order Authorizing (A) the Debtors to Assume the Agency Agreement, (B) the Conduct of the Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (C) Granting Related Relief* or Agency Agreement, as applicable.

during the Store Closing Sales. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Closing Store.

I.      The Agent shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

J.      The Agent, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

K.      Subject to the provisions of the Agency Agreement, the Agent shall have the right to sell all furniture, fixtures, and equipment located at the Closing Stores and the corporate office (the "FF&E"). The Agent may advertise the sale of the FF&E in a manner consistent with these guidelines at the Closing Stores and or if the Merchant otherwise agrees, the corporate office. The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through the back shipping areas at any time, or through other areas after Store business hours; provided, however, that the foregoing shall not apply to de minimis FF&E sales made whereby the item(s) can be carried out of the Closing Store in a shopping bag or shopping cart. For the avoidance of doubt, as of the Sale Termination Date, the Agent may abandon, in place and without further responsibility, any FF&E.

L.      The Agent shall be entitled to include Additional Agent Goods in the Store Closing Sales in accordance with the terms of the Interim Order and the Agency Agreement.

M.      At the conclusion of the Store Closing Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Merchant, the Agent and their agents and representatives shall continue to have exclusive and unfettered access to the Closing Stores.

N.      The rights of landlords against Merchant for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease; provided that to the extent certain leases of Closing Stores require written confirmation of receipt of a key to effectuate surrender, this requirement is waived.

O.      If and to the extent that the landlord of any Closing Store affected hereby contends that the Agent or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and the Agent's counsel as follows:

If to the Merchant:

F21 OpCo, LLC
110 E. 9th Street, Suite A500
Los Angeles, California 90079
Attention: Michael Brown
mbrown@thinkbrg.com

With copies to:

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, Delaware 19801
Attention:  Andrew Magaziner, Esq.(amagaziner@ycst.com) and
S. Alexander Faris, Esq. (afaris@ycst.com)

If to the Agent:

HILCO MERCHANT RESOURCES, LLC
c/o Ropes & Gray LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606, Attn:  Stephen Iacovo (stephen.iacovo@ropesgray.com)

32647456.12

**<u>EXHIBIT B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| F21 OPCO, LLC, *et al.*,[1] | Case No. 25-10469 (___) |
| Debtors. | (Jointly Administered) |
| | Ref: Docket Nos. ___ & ___ |

### FINAL ORDER AUTHORIZING (I) THE DEBTORS TO ASSUME THE AGENCY AGREEMENT, (II) THE CONDUCT OF THE STORE CLOSING SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Final Order**") (a) authorizing the Debtors, upon entry of the Final Order, to assume the Agency Agreement, (b) authorizing the Debtors to conduct store closing or similar themed sales in accordance with the terms of the Agency Agreement and the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, and (c) granting certain related relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion and the First Day Declaration; and this Court having previously entered that certain *Interim Order Authorizing (I) the Conduct of the Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances and (II) Granting Related Relief* [D.I. __] (the "**Interim Order**"); and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: F21 OpCo, LLC (8773); F21 Puerto Rico, LLC (5906); and F21 GiftCo Management, LLC (6412). The Debtors' address for purposes of service in these Chapter 11 Cases is 110 East 9th Street, Suite A500, Los Angeles, CA 90079.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given

and that no other or further notice is necessary; and upon the record herein; and after due

deliberation thereon; and this Court having determined that the relief requested in the Motion is in

the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is

hereby

### FOUND, CONCLUDED AND DETERMINED THAT:[3]

A.      The Debtors' decision to (i) enter into the Agency Agreement, a copy of which is

attached hereto as **Exhibit 1**, and (ii) perform under and make payments required by the Agency

Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their

fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other

parties in interest.

B.      The Agency Agreement was negotiated, proposed, and entered into by the Agent

and the Debtors without collusion, in good faith, and from arm's length bargaining positions.

C.      Time is of the essence in effectuating the Agency Agreement and continuing with

the Store Closing Sales contemplated therein without interruption.  The conduct of the Store

Closing Sales will provide an efficient means for the Debtors to dispose of the Store Closing

Assets.  The Store Closing Sales under the Agency Agreement must be permitted to continue to

---

[3]      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To
the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

maximize the value that the Agent may realize from the Store Closing Sales and the value that the Debtors may realize from assuming the Agency Agreement.

D.      The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

E.      The Sale Guidelines, as described in the Motion and attached as **Exhibit 2** hereto, are reasonable and appropriate and will maximize the returns on the Store Closing Assets for the benefit of the Debtors' estates and creditors.

F.      The Store Closing Sales, in accordance with the Sale Guidelines and with the assistance of the Agent, will provide an efficient means for the Debtors to liquidate and dispose of the Store Closing Assets as quickly and effectively as possible, and are in the best interests of the Debtors' estates.

G.      The Resolution Procedures are fair and reasonable, and comply with applicable law.

H.      The Debtors have represented that, pursuant to the Motion, they are not seeking to either sell or lease personally identifiable information during the course of the Store Closing Sales at the Closing Stores; *provided*, *however*, that the Agent will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.f

I.      No sale, transfer or other disposition of the Store Closing Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Store Closing Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental,

product line, de facto merger or substantial continuity or similar theories. The Agent is not a successor to the Debtors or their respective estates.

J.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

K.      The entry of this Final Order is in the best interest of the Debtors, their estates and creditors, and all other parties in interest herein.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      All objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

**I.      ASSUMPTION OF THE AGENCY AGREEMENT**

3.      The Agency Agreement is hereby assumed pursuant to section 365 of the Bankruptcy Code. The Debtors are authorized to act and perform in accordance with the terms of the Agency Agreement, including, but not limited to, making payments required by the Agency Agreement to the Agent without the need for any application of the Agent or a further order of this Court. Notwithstanding this or any other provision of this Final Order, nothing shall prevent or be construed to prevent any of the Agent (individually, as part of a joint venture, or otherwise) or any of their affiliates from bidding on the Debtors' other assets pursuant to an agency agreement or otherwise, and Agent is hereby authorized to bid on and guarantee or otherwise acquire such assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court.

32647456.12

4.      Subject to the restrictions set forth in this Final Order and the Sale Guidelines, the Debtors and the Agent are authorized to take any and all actions as may be necessary or desirable to implement the Agency Agreement and the Store Closing Sales; and each of the transactions contemplated by the Agency Agreement.

## II.      AUTHORITY TO ENGAGE IN THE STORE CLOSING SALES

5.      The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct the Store Closing Sales in accordance with this Final Order, the Sale Guidelines, the Agency Agreement, and any Side Letter (defined below).

6.      The Sale Guidelines are approved in their entirety.

7.      All entities that are presently in possession of some or all of the Store Closing Assets in which the Debtors hold an interest that are or may be subject to the Agency Agreement or this Final Order hereby are directed to surrender possession of such Store Closing Assets to the Debtors or the Agent.

8.      Except as provided herein, neither the Debtors nor the Agent nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit or any Landlord, to conduct the Store Closing Sales and any related activities in accordance with the Sale Guidelines.

## III.      ORDER BINDING

9.      This Final Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract,

32647456.12

to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Store Closing Assets.

10.    This Final Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Store Closing Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Final Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Final Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this case shall be and hereby is authorized to operate the Debtors' business to the fullest extent necessary to permit compliance with the terms of this Final Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

IV.     **CONDUCTING THE STORE CLOSING SALES**

11.     Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Agent is authorized to sell all the Store Closing Assets to be sold pursuant to the Agency Agreement free and clear of any and all liens, claims, encumbrances, and other interests ("**Encumbrances**"), including, without limitation, the liens and security interests, as the same may have been amended from time to time, of Wells Fargo and the Prepetition Term Loan Agent whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these Chapter 11 Cases were commenced; *provided, however*, that any such Encumbrances shall attach to the proceeds of the sale of the Store Closing Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closing Assets, subject to (i) the ABL-Term Loan Intercreditor Agreement and (ii) any claims and defenses that the Debtors may possess with respect thereto.

12.     Other than filings made by Wells Fargo and the Prepetition Term Loan Agent with respect to their liens and security interests in the Store Closing Assets, if any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Store Closing Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Store Closing Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of

this Final Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Store Closing Sales and related transactions.

13. All newspapers and other advertising media in which the Store Closing Sales may be advertised and all Landlords or licensors, as applicable, of the Closing Stores are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Agent to conduct the Store Closing Sales and the sale of Store Closing Assets pursuant to the Agency Agreement and the Sale Guidelines, including, without limitation, to conduct and advertise the sale of the Store Closing Assets and the Additional Agent Goods in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, and the Agency Agreement.

14. Nothing nullifies or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order or in the Agency Agreement shall in any way (a) diminish the obligation of any entity to comply with environmental laws, or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the sale of the Store Closing Assets shall not be exempt from, and the Debtors and the Agent shall be required to comply with laws and regulations of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition,

traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "**General Laws**").  Nothing in this Final Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, or otherwise, pursuant to the relief granted hereunder.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

15.    In accordance with and subject to the terms and conditions of the Agency Agreement, the Agent shall have the right to use the Closing Stores and all related store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closing Sales, free and clear of any interference from any entity or person, subject to compliance with the Sale Guidelines (as modified by any Side Letters) and this Final Order.

16.    Subject to the Resolution Procedures provided herein, the Debtors and the Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Store Closing Sales without the need for a further order of this Court, including, but not limited to, advertising the sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," and "going out of business" or similar themed sale through the posting of signs (including the use of exterior banners at non-enclosed

mall Closing Stores, and at enclosed mall Closing Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of sign-walkers, A-frames, and other street signage, in accordance with the Final Order, Agency Agreement, and Sale Guidelines.

17.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Store Closing Assets, to the extent that disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Agent are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially no later than within five (5) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

18.     Except as expressly provided in the Agency Agreement and Sale Guidelines, the sale of the Store Closing Assets shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease, license, reciprocal easement agreement, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, the rejection of leases or licenses, the necessity of obtaining any third party consents, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Store Closing Sales.  Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings shall not constitute a default under a lease or provide a basis to terminate the lease.  The Agent, along with landlords and licensors, as applicable, of the Closing Stores are authorized to enter into agreements ("**Side Letters**") between themselves modifying the Sale Guidelines without further order of this Court, and such Side

Letters shall be binding as among the Agent and any such landlords or licensors, as applicable, of the Closing Stores, provided that nothing in such Side Letters affects the provisions of paragraphs 14, 16, 17, and 29 of this Final Order.  In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

19.     Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which paragraphs 14 and 29 of this Final Order shall apply), no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder the continuation of the Store Closing Sales or the sale of Sale Closing Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords or licensors, as applicable, at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales or sale of the Store Closing Assets or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

20.     The Agent shall honor gift cards and gift certificates, that were issued by or on behalf the Debtors prior to the Petition Date through and including April 15, 2025 (the "**Gift Card**

**Termination Date**"). To the extent not already completed, as soon as reasonably practicable after entry of this Order, the Debtors shall post conspicuous signage at their stores and on their website advising customers that gift cards and gift certificates will not be honored after the Gift Card Termination Date.

21. All sales of all Store Closing Assets and the Additional Agent Goods, if any, shall be "as is" and final. Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Stores. However, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

22. Except as expressly provided for in the Agency Agreement, nothing in this Final Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Store Closing Sales shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees. Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

23. The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement, and the Debtors remain responsible for the payment of any and all sales taxes. The Debtors are directed to remit all taxes accruing from the Store Closing Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute, the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. This

Final Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

24.     The Debtors shall not sell any personal and/or confidential information about the Debtors' employees and/or customers (the "**Confidential Information**").  To the extent that the Debtors propose to sell Store Closing Assets that may contain Confidential Information, the Debtors shall remove all such Confidential Information from such Store Closing Assets before they are sold or abandoned.

25.     The Agent is authorized to sell, without incurring liability to any person or entity, the Store Closing Assets in accordance with the terms of this Final Order, the Agency Agreement and the Sale Guidelines.

26.     Nothing in this Final Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Store Closing Sales in accordance with the Sale Guidelines, as may have been modified by Side Letter, shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

27.     During the Store Closing Sales Term, the Agent shall be granted a limited license and right to use the trade names, logos, e-mail lists, mailing lists, customer lists, and e-commerce sites (including (without limitation) websites and social media), including a banner on such sites and a store locator to identify the Closing Stores, relating to and used in connection with the operation of the stores as identified in the Agency Agreement, solely for the purpose of advertising

the Store Closing Sales in accordance with the terms of the Agency Agreement, this FinL aorder, and the Sale Guidelines; *provided, however,* that the Agent shall not receive personally identifiable information from the Debtors.

## V.    RESOLUTION PROCEDURES FOR DISPUTES REGARDING LIQUIDATION LAWS

28.    To the extent that the Store Closing Sales at the Closing Stores are conducted in accordance with this Final Order and the Sale Guidelines, and are therefore conducted under the supervision of this Court, such Store Closing Sales are authorized notwithstanding any federal, state, or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, bulk sale laws, or fast pay laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions, (collectively, the "**Liquidation Laws**").

29.    Provided that the Store Closing Sales are conducted in accordance with the terms of this Final Order, the Agency Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Laws and, subject to paragraphs 14 and 17 herein, are authorized to conduct the Store  Closing Sales in accordance with the terms of this Final Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Laws.  To the extent that between the Petition Date and the date of the Final Hearing there is a dispute arising from or relating to the Store Closing Sales, this Final Order, the Agency Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sales Laws (a "**Liquidation Dispute**"), the following procedures shall apply:

a.      The Court shall retain exclusive jurisdiction to resolve the Liquidation Dispute which such Liquidation Dispute will be heard within fourteen (14) days of service of the Dispute Resolution Motion, absent a party obtaining expedited relief.  Nothing in this Final Order shall constitute a ruling with respect to any issues to be raised with respect to a Liquidation Dispute.  Any Governmental Unit may assert a Liquidation Dispute and shall send a notice (the "**Dispute Notice**") explaining the nature of the dispute to: (i) the Debtors' proposed counsel, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Andrew L. Magaziner, Esq. (amagaziner@ycst.com) and S. Alexander Faris, Esq. (afaris@ycst.com); (iii) counsel to Wells Fargo Bank, N.A. in its capacity as Prepetition ABL Administrative Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Chad Simon, Esq. (csimon@otterbourg.com)        and        Daniel        Fiorillo,        Esq. (dfiorillo@otterbourg.com); (iv) counsel to Pathlight Capital LP in its capacity as Prepetition Term Loan Agent, Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, NY 10036, Attn: Steven E. Fox, Esq. (sfox@riemerlaw.com) and Paul D. Bekker, Esq. (pbekker@riemerlaw.com); (v) counsel to Hilco Merchant Resources, LLC, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606, Attn:  Stephen Iacovo (stephen.iacovo@ropesgray.com); and (vi) counsel to any statutory committee, no later than fourteen (14) days following the service of this Final Order.

b)      If the Debtors, the Agent and the Governmental Unit are unable to resolve the Liquidation Dispute within fourteen (14) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Liquidation Dispute (a "**Dispute Resolution Motion**").

c)      In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or this Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Interim Order or this Final Order nor the conduct of the Debtors pursuant to the Interim Order or this Final Order, violates such Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or this Final Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Store Closing Sales pursuant to the Interim Order or this Final Order, as applicable, absent further order of the Court. Upon the entry of the Interim Order or this Final Order, the Court grants authority for the Debtors and the Agent to conduct the Store Closing Sales pursuant to the terms of the Interim Order or this Final Order, the Agency Agreement, and the Sale Guidelines (as may be modified by Side Letters, as defined in the Proposed Orders) and to take all actions reasonably related thereto or arising in connection therewith. The

Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such Liquidation Laws by the Bankruptcy Code. Nothing in the Interim Order or this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

30.     Within two (2) business days of the entry of this Final Order, the Debtors shall serve copies of this Final Order, which includes the Agency Agreement and the Sale Guidelines, by email, facsimile, or regular mail on the Applicable Governmental Units and the Landlords.

## VI.    SECTIONS 363(m) AND 364(e) OF THE BANKRUPTCY CODE

31.     Entry into the Agency Agreement is undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order is modified, amended or vacated by subsequent order of the Court or any other court.  The modification, amendment or vacatur of the authorization provided herein to enter into the Agency Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions (including the enforceability of the Store Closing Sales or the liens or priority authorized or created under the Agency Agreement or this Final Order solely in respect of Additional Agent Goods and proceeds therefrom), unless such authorization is duly stayed pending such appeal.  The Agent is entitled to all of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

## VII.   ADDITIONAL AGENT GOODS

32.     The Agent is authorized to supplement the Merchandise in the Store Closing Sales with Additional Agent Goods; *provided*, that the Debtors may reasonably object to the inclusion of Additional Agent Goods that are not of like kind and are of lesser quality to the Merchandise in

the Store Closing Sales at the Closing Stores, in which case the Debtors and the Agent shall work in good faith to resolve such objection, which resolution may require the exclusion of such Additional Agent Goods subject to the objection; *provided, further*, that the cost of Additional Agent Goods shall not exceed twenty percent (20%) of the aggregate Cost Value (as defined in the Agency Agreement) of the Merchandise in the Store Closing Sale. The Additional Agent Goods shall be purchased by the Agent as part of the Store Closing Sales and delivered to the Closing Stores at the Agent's sole expense (including as to labor, freight, and insurance relative to shipping such Additional Agent Goods to the Closing Stores).  Sales of Additional Agent Goods shall be run through the Debtors' cash register systems; provided, however, that the Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Agent Goods from the sale of Merchandise. The Agent and Debtors shall cooperate to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could identify the Additional Agent Goods from the Merchandise. The Agent shall provide signage in the Closing Stores notifying customers that the Additional Agent Goods have been included in the Store Closing Sale.

33.     All transactions relating to the Additional Agent Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Agent to the Debtors under Article 9 of the Uniform Commercial Code (the "**UCC**") and not a consignment for security purposes.  Subject solely to Agent's obligations to pay to the Debtors the Additional Agent Goods Fee (as defined in the Agency Agreement), at all times and for all purposes the Additional Agent Goods and their proceeds shall be the exclusive property of the Agent, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim

32647456.12

against any of the Additional Agent Goods or the proceeds thereof. The Additional Agent Goods shall at all times remain subject to the exclusive control of the Agent. The Debtors shall, at Agent's sole cost and expense, insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard thereto. The Agent shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods.

34.     The Agent is hereby granted a first priority security interest in and lien upon (a) the Additional Agent Goods and (b) the Additional Agent Goods proceeds, less the Additional Agent Goods Fee, and which security interest shall be deemed perfected without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that the Agent is hereby authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying the Agent's interest in the Additional Agent Goods as consigned goods thereunder and the Debtors as the consignee therefor, and the Agent's security interest in and lien upon such Additional Agent Goods and the Additional Agent Goods proceeds).

## VIII.  MISCELLANEOUS

35.     Any transfers by the Debtors to the Agent prior to the Petition Date (including, without limitation, any proceeds under the Agency Agreement and the valid, binding, and enforceable security interests granted to the Agent solely in respect of the Additional Agent Goods and the proceeds therefrom (subject to the Agent's payment of the Additional Agent Goods Fee)) are not subject to avoidance.

36.     Non-material modifications, amendments, or supplementations to the Agency Agreement and related documents by the parties may be made in accordance with the terms thereof without further order of this Court; *provided that* any such modifications, amendment or

supplements are not adverse to the Debtors or their estates, the interest of the landlords under the applicable Leases are not adversely affected, or as otherwise ordered by this Court; *provided further that* the Debtors shall provide counsel to Wells Fargo and counsel to the Prepetition Term Loan Agent copies of any such modifications, amendments, or supplements at least two (2) business days prior to the effectiveness thereof, which such modification(s), amendment(s), or supplement(s) shall be effective unless Wells Fargo or the Prepetition Term Loan Agent delivers a written objection to the Debtors' counsel, with a copy to any statutory committee (email being sufficient) prior to the expiration of such two (2) business day period.

37.     Neither the Agent nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing additional services to the Debtors or bidding on the Debtors' assets in connection with any other future process that may or may not be undertaken by the Debtors to close stores; *provided that* any such services and/or sales are approved by separate order of this Court.

38.     The Debtors are authorized and permitted to transfer to the Agent personal information in the Debtors' custody and control solely for the purposes of assisting with and conducting the Store Closing Sales and only to the extent necessary for such purposes, provided that Agent removes such personal information from the FF&E prior to the abandonment of the same.

39.     Nothing contained in any plan confirmed in these Chapter 11 Cases or any order of this Court confirming such plan or in any other order in these Chapter 11 Cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Final Order.

32647456.12

40.    The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, including, without limitation, the Agent shall not be, or to be deemed to be: (a) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories; or (b) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

41.    Notwithstanding the relief granted herein and any actions taken hereunder, except with respect to the Agent, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

42.    Nothing in this Final Order is intended to affect any rights of any Applicable Governmental Unit to enforce any law affecting the Debtors' conduct of the Store Closing Sales prior to the Petition Date.

43.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

44.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Order.  The failure to specifically include

32647456.12

any particular provision of the Agency Agreement in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Agency Agreement and all of its provisions, payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Final Order.

45.     To the extent there is any conflict between this Final Order, the Sale Guidelines, and the Agency Agreement, the terms of this Final Order shall control over all other documents, and the Sale Guidelines shall control over the Agency Agreement.

46.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation or enforcement of this Final Order or the Agency Agreement.

32647456.12

## **EXHIBIT 1**

**Agency Agreement**

[Intentionally Omitted]

**EXHIBIT 2**

**Sale Guidelines**

# SALE GUIDELINES[1]

A.      The Store Closing Sales shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

B.      The Store Closing Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Store Closing Sales shall be conducted on Sunday unless the Merchant had been operating such Closing Store on a Sunday.

C.      On "shopping center" property, the Agent shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; *provided* that Agent may solicit customers in the Closing Stores themselves. On "shopping center" property, the Agent shall not use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

D.      The Merchant and the Agent may advertise the Sale as a "store closing" "sale on everything", "everything must go", or similar themed sale, or "going out of business."  The Agent may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.

E.      Agent shall be permitted to utilize display, hanging signs, and interior banners in connection with the Store Closing Sales; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and the Agent shall not use neon or day-glo on its display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Merchant and the Agent shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Closing Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Store Closing Sales is being conducted only at the affected Closing Store, shall not be wider than the storefront of the Closing Store. In addition, the Merchant and the Agent shall be permitted to utilize sign walkers and A-frames in a safe and professional manner and in accordance with the terms of the Final Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement.

F.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

G.      Except with respect to the hanging of exterior banners, the Agent shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

H.      The Agent shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease. No property of the landlord of a Closing Store shall be removed or sold

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Debtors' Motion for Entry of (I) Interim Order Authorizing (A) the Conduct of the Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances and (B) Granting Related Relief, and (II) Final Order Authorizing (A) the Debtors to Assume the Agency Agreement, (B) the Conduct of the Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (C) Granting Related Relief* or Agency Agreement, as applicable.

during the Store Closing Sales. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Closing Store.

I.      The Agent shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

J.      The Agent, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

K.      Subject to the provisions of the Agency Agreement, the Agent shall have the right to sell all furniture, fixtures, and equipment located at the Closing Stores and the corporate office (the "FF&E"). The Agent may advertise the sale of the FF&E in a manner consistent with these guidelines at the Closing Stores and or if the Merchant otherwise agrees, the corporate office. The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through the back shipping areas at any time, or through other areas after Store business hours; provided, however, that the foregoing shall not apply to de minimis FF&E sales made whereby the item(s) can be carried out of the Closing Store in a shopping bag or shopping cart. For the avoidance of doubt, as of the Sale Termination Date, the Agent may abandon, in place and without further responsibility, any FF&E.

L.      The Agent shall be entitled to include Additional Agent Goods in the Store Closing Sales in accordance with the terms of the Final Order and the Agency Agreement.

M.      At the conclusion of the Store Closing Sales at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Merchant, the Agent and their agents and representatives shall continue to have exclusive and unfettered access to the Closing Stores.

N.      The rights of landlords against Merchant for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease; provided that to the extent certain leases of Closing Stores require written confirmation of receipt of a key to effectuate surrender, this requirement is waived.

O.      If and to the extent that the landlord of any Closing Store affected hereby contends that the Agent or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and the Agent's counsel as follows:

If to the Merchant:

F21 OpCo, LLC
110 E. 9th Street, Suite A500
Los Angeles, California 90079
Attention: Michael Brown
mbrown@thinkbrg.com

32647456.12

With copies to:

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, Delaware 19801
Attention:  Andrew Magaziner, Esq.(amagaziner@ycst.com) and
S. Alexander Faris, Esq. (afaris@ycst.com)

If to the Agent:

HILCO MERCHANT RESOURCES, LLC
c/o Ropes & Gray LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606, Attn:  Stephen Iacovo (stephen.iacovo@ropesgray.com)